John C. Re
ARONAUER, RE & YUDELL, LLP
444 Madison Avenue, 17th Floor
New York, NY 10022
Attorneys for Plaintiff



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- :

JOE'S JEANS SUBSIDIARY, INC.                    :

     Plaintiff,                                  :

     v.                                          :

MAGGY LONDON                                     :
INTERNATIONAL, LTD.

     Defendant.                                 :

-------------------------------------------------------- :

Civil Action No.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Joe' Jeans Subsidiary, Inc., brings this Complaint against Maggy London

International, Ltd. ("Defendant" or "Maggy London") for a declaratory judgment that Plaintiff's

continued use of the designation "Muse" as the name of a particular fit of Plaintiff's "Joe's"

branded premium denim jeans does not infringe the Defendant's alleged trademark rights in the

mark "Muse" for women's apparel, including blouses, dresses, and sweaters, and alleges:

### NATURE OF THE ACTION

1.     This is an action for a Declaratory Judgment under 28 U.S.C. § 2201.  Plaintiff

seeks a declaration from this Court that its longstanding and continued use of the style

designation "Muse" as the name of a particular style of premium denim jeans:  (1) does not

infringe Defendant's alleged trademark rights under 15 U.S.C. § 1114(1)(a); (2) does not

constitute false designation of origin under 15 U.S.C. § 1125(a); and (3) does not constitute

unfair competition under state law.

1

2.      Plaintiff also seeks a declaration of equitable estoppel prohibiting the enforcement against Plaintiff of any alleged trademark rights Defendant claims it has in any mark incorporating the word "Muse." Finally, Plaintiff seeks its attorneys' fees, expenses, and costs incurred in this action, and any other relief the Court deems just and proper.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, § 1338, and § 2201.

4.      This Court has supplemental jurisdiction over Plaintiff's non-federal claims, pursuant to 28 U.S.C. § 1367, because these claims are so related to the federal claims that they form a part of the same case or controversy under Article III of the United States Constitution.

5.      This Court also has original jurisdiction over this entire action, pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendant because of, *inter alia*, (1) Defendant's principal place of business is located in this District, (2) on information and belief, Defendant has transacted business within this State and District, and (3) Defendant has otherwise made and established contacts with this State and District sufficient to permit the exercise of personal jurisdiction.

7.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to these claims occurred in this District and a substantial part of the property that is the subject of the action is situated in this District.

## THE PARTIES

8.      Plaintiff Joe's Jeans Subsidiary, Inc. is corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5901 South Eastern Avenue, Commerce, California 90040.

9.      On information and belief, Defendant Maggy London International, Ltd. is a New York corporation organized and existing under the laws of the State of New York with its principal place of business at 530 Seventh Avenue, New York, New York 10018.

## FACTS COMMON TO ALL COUNTS OF COMPLAINT

10.     Plaintiff designs, sources and sells its "Joe's" and "Joe's Jeans" branded premium apparel products to over 1,200 retail stores in the U.S. and abroad. With its competitive advantages and industry expertise in denim-wear and denim-related products, Plaintiff produces one of the most recognized and sought-after premium denim brands in the world. Plaintiff's products are designed internally and sourced to specification from suppliers primarily located in the U.S., Mexico and Morocco. Plaintiff's finished goods are then distributed directly to Plaintiff's customers from its distribution center in Los Angeles. Plaintiff maintains third party showrooms in New York and Los Angeles to showcase its products for its customers. Plaintiff has recently opened a branch office in Paris to distribute its products in Europe.

11.     Since at least as early as July 1996, Plaintiff has used the trademark "Joe's" in connection with its denim products discussed in the preceding paragraph. Plaintiff's premium denim jeans sold under the "Joe's" brand are typically priced between $160 and $300. Plaintiff's "Joe's" and "Joe's Jeans" brand jeans have received repeated and numerous mentions since the brand was launched and the brand is regularly featured in widely distributed and read fashion magazines such as *Cosmopolitan*, *InStyle*, *Glamour*, *Real Simple*, and *People*. Oftentimes in

3

such magazines, Plaintiff's premium jeans are identified as being worn by well-known celebrities such as Tom Cruise, Will Smith, and Katie Holmes.

12.    Building upon the success of its "Joe's" branded jeans, Plaintiff was one of the first companies in the premium jeans market to begin offering, several years ago, its jeans in several different "fits" or "styles," *i.e.*, to correspond to the different body types and fit preferences of its customers.  Accordingly, Plaintiff adopted several named designations to correspond to its various fits, including, "Cigarette" (a straight leg jean), "The Honey" (a curvy fit jean), "Socialite" (a classic fit jean), "Rocker" (a flared bottom jean), "Twiggy" (a tall fit jean), "Provocateur" (a petite fit jean), and "Muse" (a high-waist fit jean).

13.    Plaintiff did not adopt the fits discussed in the preceding paragraph as stand-alone brands; rather, Plaintiff adopted the designations as fit or style classifications falling under the already well-established and recognized "Joe's" and "Joe's Jeans" brands.  In fact, the fit names appear primarily only in Plaintiff's promotional materials for its jeans and on the "tear-away" tags that are attached to the exterior of Plaintiff's jeans, but removed after the jeans are purchased or worn.

14.    Purchasers of Plaintiff's premium jeans are not attracted to the fit names; rather, they are attracted to the established "Joe's" and "Joe's Jeans" brands.  Purchasers of Plaintiff's jeans use the various fit names merely to identify their preferred fit or style of the jeans sold under the "Joe's" and "Joe's Jeans" brands and only become familiar with the fits names after having become familiar with Plaintiff's "Joe's" and "Joe's Jeans' brands.

15.    Plaintiff currently offers ten fits for its "Joe's" and "Joe's Jeans" branded jeans, of which "Muse" is one.  A representative example of Plaintiff's use of its fit names is shown in Exhibit A to the Complaint.

4

16.    Since at least as early as November 2004, Plaintiff has used the "Muse" style fit designation, as discussed above. Plaintiff has used the "Muse" designation continuously since that time and Plaintiff's "Muse" high-waist fit jean sold under the "Muse" designation has enjoyed substantial commercial success.

17.    On information and belief, Defendant designs women's apparel such as floral patterned dresses, blouses, and skirts. Defendant's apparel is sold through retail channels such as Nordstrom's, Macy's and similar women's clothing stores. Defendant does not sell, nor has it ever sold, jeans, premium jeans, or denim products of any kind. Defendant's products sold at Nordstrom's, for example, consist only of patterned dresses. Defendant's products sold at Nordstrom's are priced between $130 and $180.

18.    On information and belief, Defendant uses its alleged trademark "Muse" in connection with women's apparel, including patterned dresses, blouses, and skirts. Defendant is the record owner of Registration No. 2,589,023, issued July 2, 2002, for its alleged "Muse" trademark for the following goods: women's wearing apparel and sportswear, namely, dresses, blouses, pants, skirts, jackets, coats, sweaters, shirts, tops and accessories, namely scarves.

19.    At no point since Plaintiff adopted the "Muse" style designation and began using the designation in November 2004 has Plaintiff or anyone affiliated with Plaintiff encountered Defendant or Defendant's alleged "Muse" trademark in the marketplace of premium denim jeans. Likewise, Plaintiff is wholly unaware of any instances of consumer confusion arising as a result of Plaintiff's use of the "Muse" style fit designation with its particular high-waist fit of its "Joe's" branded denim jeans and Defendant's use of its alleged "Muse" trademark in connection with its women's dresses and blouses.

20.    Between Plaintiff's commencement of its use of the "Muse" style fit designation in November 2004 and December 2007, neither Defendant nor any other entity objected to Plaintiff's use of the "Muse" style fit designation.

21.    On December 19, 2007, Defendant's counsel sent a letter to Plaintiff alleging that Plaintiff's use of the "Muse" style fit designation constituted infringement of Defendant's alleged "Muse" trademark and was "likely to cause confusion in the marketplace concerning the source or sponsorship" of Plaintiff's premium denim jeans. In the letter, Defendant's counsel demanded that Plaintiff "terminate all use of the mark 'Muse' or any variation thereof" and to "confirm such termination of use . . . immediately in writing." Counsel for Defendant additionally demanded that Plaintiff provide it with information on the number of units sold and revenue generated by products sold under the "Muse" designation. A copy of the December 19, 2007 letter is attached hereto as Exhibit B.

22.    Following its receipt of the December 19, 2007 letter, Plaintiff forwarded the letter to its outside counsel and asked its outside counsel to contact counsel for Defendant. Plaintiff's outside counsel subsequently wrote a letter dated December 26, 2007 to counsel for Defendant indicating that Plaintiff would respond after January 1, 2008 and asking, in the meantime, for Plaintiff to provide more information on the specific types of clothing that Defendant sold under its alleged "Muse" trademark. A copy of the December 26, 2007 letter is attached hereto as Exhibit C.

23.    On January 3, 2008, Plaintiff's counsel sent Defendant's counsel a more substantive written response to Defendant's counsel's December 19, 2007 letter wherein Plaintiff's counsel highlighted for Defendant's counsel the differences between the nature of Plaintiff's use of its "Muse" style fit designation and its premium denim jeans sold under the "Muse" designation and the nature of Defendant's use of the alleged "Muse" trademark and

Defendant's products sold under the alleged "Muse" mark. In particular, Plaintiff's counsel stressed that Plaintiff's "Muse" designation is never used as a stand-alone trademark or with products other than Plaintiff's "Joe's" brand premium jeans. Plaintiff's counsel also informed Defendant's counsel that Plaintiff had used the "Muse" style designation since at least as early as November 2004 and that no instances of actual confusion had come to Plaintiff's attention in the more than three years of Plaintiff's use of the style fit designation. Plaintiff's counsel concluded in the letter, therefore, that Plaintiff did not agree with Defendant that there was a likelihood of confusion between the marks. A copy of the January 3, 2008 letter is attached hereto as Exhibit D.

24. On January 29, 2008, nearly a month after receiving Plaintiff's counsel's January 3, 2008 letter, Defendant's counsel responded to Plaintiff's counsel's January 3 letter. In its January 29 letter, Defendant's counsel reiterated Defendant's belief that there is a likelihood of confusion between the marks and dismissed the fact that there had been no known instances of actual confusion in the more than three years that the marks had coexisted. A copy of the January 29, 2008 letter is attached hereto as Exhibit E.

25. Since January 29, 2008, counsel for Plaintiff and Defendant have had several telephone conversations during which they have discussed the possible resolution of the dispute between Plaintiff and Defendant, including how the parties might continue to be able to use their respective marks, as they have for more than three years, but Defendant, through its counsel, has rejected Plaintiff's proposals and has indicated that a lawsuit would be initiated if Plaintiff does not immediately cease its use of the "Muse" style designation with premium denim jeans.

26. Defendant's threatened litigation interferes with Plaintiff's ability to continue its use its "Muse" style fit designation and its legitimate business operations.

## COUNT I
## DECLARATION OF NON-INFRINGEMENT UNDER THE LANHAM ACT

27.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 26 hereof.

28.     A justiciable and actual controversy exists before this Court with respect to whether Plaintiff's continued use of the "Muse" style fit designation infringes any of Defendant's alleged rights under the Lanham Act, 15 U.S.C. § 1051 et. seq.

29.     Plaintiff's continued use of the style fit designation "Muse" with its premium denim jeans is not likely to cause confusion as to the source or sponsorship of Plaintiff's premium denim jeans and Defendant's alleged "Muse" branded women's apparel.

30.     While each of the marks at issue consists of the term "Muse," the marks are used by Plaintiff and Defendant in very different manners and the term "Muse" is not so unique or exclusively used by Defendant in the apparel industry that Defendant's rights in the "Muse" mark are strong enough to preclude Plaintiff's use of the "Muse" designation with products different from those sold by Defendant under its alleged "Muse" mark.

31.     Defined as "the source of an artist's inspiration," *e.g.*, "Picasso was his muse," or as "one of the nine goddess daughters of Zeus and Mnemosyne," Defendant's alleged "Muse" mark is, at best, a highly suggestive trademark for women's apparel products and is not entitled to a wide scope of trademark protection.

32.     Plaintiff sells only premium denim jeans under its "Muse" style fit designation. Such goods are distinct from Defendant's patterned dresses and blouses sold under Defendant's alleged "Muse" trademark, thus preventing any likelihood of confusion arising among the relevant consumers for the products sold under the marks.  The marketplace of premium denim jeans is additionally a distinct niche of the women's apparel market that does not overlap with the market within which Defendant's products are sold.

33.     Neither Plaintiff's premium denim jeans nor Defendant's dresses and blouses are inexpensive goods that would be purchased on impulse.  The respective products are likely to be purchased by discerning and sophisticated purchasers of expensive women's clothing that make their purchases carefully and only after deliberation, thus additionally eliminating the possibility of any confusion resulting from Plaintiff's continued use of its "Muse" style fit designation with premium denim jeans and Defendant's use of its alleged "Muse" trademark with women's blouses and dresses.

34.     The parties' concurrent use of their marks since at least November 2004 without any known instances of actual confusion arising between the marks attests to the fact that there is no likelihood of confusion between the marks.

35.     Plaintiff's continued use of "Muse" as the name of a particular style of denim jeans under the "Joe's" brand of premium jeans does not infringe any rights of Defendant under 15 U.S.C. § 1114(1)(a).

36.     Plaintiff requests a declaration from the Court that its continued use of the "Muse" style fit designation does not infringe any of Defendant's alleged rights under 15 U.S.C. § 1114(1)(a).

## COUNT II
## DECLARATION OF NO FALSE
## DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

37.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 36 hereof.

38.     A justiciable and actual controversy exists before this Court with respect to whether Plaintiff's continued use of its "Muse" style fit designation infringes any of Defendant's alleged rights under 15 U.S.C. § 1125(a).

39.    Plaintiff's continued use of its "Muse" style fit designation is not likely to cause confusion as to source of sponsorship and does not constitute a false designation of origin under 15 U.S.C. § 1125(a).

40.    As discussed in paragraphs 30 and 31, *supra*, Defendant lacks strong enough rights in its alleged "Muse" trademark to preclude Plaintiff's use of its "Muse" style fit designation as the name of a particular fit of Plaintiff's premium denim jeans.

41.    Plaintiff requests a declaration from the Court that its continued use of the "Muse" style fit designation does not constitute unfair competition and/or a false designation of origin under 15 U.S.C. § 1125(a).

## COUNT III
## DECLARATION OF NO UNFAIR COMPETITION UNDER STATE COMMON LAW

42.    Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 41 hereof.

43.    A justiciable and actual controversy exists before this Court with respect to whether Plaintiff's continued use of its "Muse" style fit designation for premium denim jeans constitutes unfair competition under state common law.

44.    Plaintiff's continued use of the "Muse" style fit designation is not likely to cause confusion as to the source or sponsorship of Defendant's "Muse" products.

45.    Plaintiff requests a declaration from the Court that its continued use of the "Muse" style fit designation does not violate New York state common law.

## COUNT IV
## DECLARATION OF EQUITABLE ESTOPPEL PROHIBITING ENFORCEMENT

46.    Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 45 hereof.

47.    Plaintiff relied to its detriment on Defendant's unreasonable delay in asserting its claims against Plaintiff.  Defendant's delay in asserting its claims for more than three years after Plaintiff began using its "Muse" style fit designation, which use was open and notorious and was known or should have been known by Defendant, is not justified or excused in law or in equity.

48.    By its conduct complained of herein, Defendant has relinquished any and all rights it might ever have had to object to the use by Plaintiff of the "Muse" style fit designation.

49.    Plaintiff requests a declaration from this Court that Defendant is barred by the equitable doctrines of laches, estoppel and/or acquiescence from challenging Plaintiff's continued use of the "Muse" style fit designation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on each count of this Complaint as follows:

A.    Declaring that Plaintiff's continued use of the "Muse" style fit designation does not:

      (1)    Constitute trademark infringement under 15 U.S.C. § 1114(1)(a);

      (2)    Constitute false designation of origin under 15 U.S.C. § 1125(a); or

      (3)    Constitute unfair competition under state common law;

B.    Declaring that Defendant is barred by the equitable doctrines of laches, estoppel and/or acquiescence from challenging Plaintiff's continued use of the "Muse" designation as the name of a fit for its "Joe's" brand of premium denim jeans.

C.    Permanently enjoining Defendant and its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them in challenging Plaintiff's use of the "Muse" style fit designation.

D.    Finding this case to be exceptional pursuant to 15 U.S.C. § 1117(a);

E.    Awarding Plaintiff its attorneys' fees, expenses and costs incurred in this action pursuant to 15 U.S.C. § 1117(a) and 28 U.S.C. §1920.

F.    Awarding to Plaintiffs such further relief as this Court deems just and proper.

Respectfully submitted,

ARONAUER, RE & YUDELL, LLP


By: _____
John C. Re (JR 7239)
ARONAUER, RE & YUDELL, LLP
444 Madison Avenue, 17th Floor
New York, NY 10022
Tel 215.755.6000
Fax 215.755.6006


*Of Counsel*:

FLASTER/GREENBERG P.C.
Abbe F. Fletman
Jordan A. LaVine
1628 John F. Kennedy Boulevard
Suite 1500
Philadelphia, PA  19103
Tel 215.279.9389
Fax 215.279.9394

*ATTORNEYS FOR PLAINTIFF, JOE'S JEANS, INC.*

*Exhibit "A"*



SOUND ON

PENCIL LEG

CHELSEA CIGARETTE HONEY MUSE PROVOCATEUR ROCKER SOCIALITE TWIGGY
[leggings] [straight] [curvy] [high-waist] [petite] [flare] [classic] [tall]

*Exhibit "B"*

# KUDMAN TRACHTEN ALOE LLP

### ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4400
NEW YORK, NY 10118
(212) 868-1010

TELECOPIER (212) 868-0013
www.kudmanlaw.com

PAUL H. ALOE†
STUART R. KUDMAN*
GARY TRACHTEN††

MICHELLE S. BABBITT*

THOMAS M. FURTH**

MATTHEW H. COHEN*
WILLIAM E. HAMMOND**
JOHN S.LEGO***
ALISA L. SILVERSTEIN*

*ADMITTED IN NY & NJ
**ADMITTED IN NY ONLY
***ADMITTED IN NY & CA
†ADMITTED IN NY, NJ & PA
††ADMITTED IN NY, NJ, CT & GA

December 19, 2007

**VIA OVERNIGHT COURIER**

Joe's Jeans, Inc.
5901 South Eastern Avenue
Commerce, CA 90040

> **Re:**  **MUSE Trademark**
> **Maggy London International, Ltd.**
> **Our File No.:  2020.101**

Gentlemen:

This firm represents Maggy London International, Ltd. ("Maggy London"). Maggy London is the owner of valuable trademark rights in its mark MUSE. Our client has used the mark MUSE in commerce for women's clothing since at least as early as December 1999, and has built up valuable good will in its mark. Maggy London has registered its MUSE trademark and is the owner of U.S. Registration No. 2,589,023 and International Registration No. 0893819.

It has come to our attention that Joe's Jeans, Inc. is selling women's jeans under the MUSE trademark. Your use of the identical mark for women's clothing is an infringement of our client's intellectual property rights. This use by you of the infringing mark is likely to cause confusion in the marketplace concerning the source or sponsorship of your goods.

Maggy London hereby demands that you terminate all use of the mark MUSE or any variation thereof which is confusingly similar to Maggy London's MUSE trademark in connection with women's clothing. We require that you confirm such termination of use to this office immediately in writing. We also demand that you provide us with the date of first use by you of the MUSE mark, the number of units sold to date, and the dollar amount of sales of MUSE products.

KUDMAN TRACHTEN ALOE LLP

Joe's Jeans, Inc.
December 19, 2007
Page 2


Please give this matter your immediate attention. Maggy London vigorously protects its intellectual property rights and it reserves its rights to seek any and all remedies available to it under applicable law. Such remedies may include, without limitation, an award of damages, injunctive relief and attorney's fees. With your prompt and complete cooperation, however, this matter may be susceptible to resolution. Please respond within 10 days of receipt hereof.


Yours truly,


Thomas M. Furth

*Exhibit "C"*



Eight Penn Center
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103
215-279-9393
Fax: 215-279-9394
www.flastergreenberg.com

**JORDAN A. LaVINE**
Direct Dial: (215) 279-9389
E-Mail: jordan.lavine@flastergreenberg.com

December 26, 2007

Via Facsimile (212-868-1010) and First Class Mail

Thomas M. Furth
Kudman Trachten Aloe LLP
The Empire State Building
350 Fifth Avenue, Suite 4400
New York, NY 10118

Re:   Maggy London International, Ltd./Joe's Jeans, Inc.
       Your File No. 2020.101
       Our Ref. No. I0129.5003

Dear Mr. Furth:

We represent Joe's Jeans, Inc. in connection with its intellectual property matters. Your letter of December 19, 2007 has been forwarded to our office.

We are investigating the allegations contained in your letter. Because our primary contact at Joe's Jeans is out of the office until after the 1st of the year, we will be in a better position to more fully respond to your letter after the 1st. In the meantime, if you can provide us with more information on the types of clothing with which your client has used its "Muse" trademark, it would enable us to better assess your allegations.

If you would like to discuss this matter in the meantime, please contact us.

Very truly yours,

Jordan A. LaVine

Cc:   Joe's Jeans, Inc.

*Exhibit "D"*



**FLASTER GREENBERG**

ATTORNEYS AT LAW • A PROFESSIONAL CORPORATION

Eight Penn Center
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103
215-279-9393
Fax: 215-279-9394
www.flastergreenberg.com

**JORDAN A. LaVINE**
Direct Dial:  (215) 279-9389
E-Mail:  jordan.lavine@flastergreenberg.com

January 3, 2008

Via Facsimile (212-868-0013) and First Class Mail          Without Prejudice

Thomas M. Furth
Kudman Trachten Aloe LLP
The Empire State Building
350 Fifth Avenue, Suite 4400
New York, NY  10118

    Re:  Maggy London International, Ltd./Joe's Jeans, Inc.
         Your File No. 2020.101
         Our Ref. No. 10129.5003

Dear Mr. Furth:

    This is further to our letter of December 26, 2007.  We have now had a chance to study your allegations in more detail and discuss the matter with Joe's Jeans.

    While you have not yet provided more detail concerning your client's product lines, as requested in our December 26 letter, our understanding is that your client's products sold under its alleged "Muse" trademark are limited to blouses and dresses.  Please correct our understanding if we are incorrect.

    In contrast to your client's use of the alleged "Muse" trademark with dresses and blouses, Joe's Jeans has used its "Muse" trademark since at least as early as November 2004 to identify a particular "style" or "fit" of its premium jeans sold under its registered "Joe's" and "Joe's Jeans" trademarks.  Joe's Jeans' "Muse" style is one of ten such styles.  Joe's Jeans' "Muse" designation is never used as a standalone trademark or with products other than Joe's Jeans' premium jeans.

    You allege in your December 19 letter that Joe's Jeans' use of the "Muse" style designation is likely to cause confusion with your client's alleged "Muse" trademark, but Joe's Jeans is unaware of any instances of actual confusion in the over three years that the marks have

Thomas M. Furth
January 3, 2008
Page 2

apparently coexisted. We believe the nature of Joe's Jeans' use of the "Muse" mark and the differences between the types of apparel sold under the marks are the reasons that no instances of confusion have arisen. For these same reasons, we do not believe any confusion is likely to occur in the future.

We additionally note that your client's rights in its alleged "Muse" mark are not as broad as alleged in your letter. While your client's registration identifies items such as pants, jackets, shoes and hats, it does not appear that your client has ever actually used in commerce the alleged "Muse" mark with such products.

In sum, for all of the foregoing reasons, Joe's Jeans does not believe there is any likelihood of confusion between the respective "Muse" trademarks. Nonetheless, Joe's Jeans is willing to consider entering into an agreement with your client that would perhaps provide some limitations on how the parties use their respective marks and hopefully address any concerns of your client. Such an arrangement appears to make sense in this situation, as opposed to the parties spending time and money on litigation, the results of which would be unpredictable.

Please contact us at your convenience so that we can further discuss this matter.

Very truly yours,

Jordan A. LaVine

Cc:    Joe's Jeans, Inc.

*Exhibit "E"*

# KUDMAN TRACHTEN ALOE LLP
### ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4400
NEW YORK, NY 10118
(212) 868-1010

TELECOPIER (212) 868-0013
www.kudmanlaw.com

PAUL H. ALOE†
STUART R. KUDMAN*
GARY TRACHTEN††

MICHELLE S. BABBITT*

THOMAS M. FURTH**

MATTHEW H. COHEN*
WILLIAM E. HAMMOND**
JOHN S.LEGO***
ALISA L. SILVERSTEIN*

*ADMITTED IN NY & NJ
**ADMITTED IN NY ONLY
***ADMITTED IN NY & CA
†ADMITTED IN NY, NJ & PA
††ADMITTED IN NY, NJ, CT & GA

January 29, 2008

**VIA E-Mail and FIRST CLASS MAIL**

Jordan A. LaVine, Esq.
Flaster Greenberg
Eight Penn Center
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103

> Re:  **Maggy London International, Inc./Joe's Jeans, Inc.**
> **MUSE Trademark Infringement**
> **Our File:  2020.101**

Dear Mr. LaVine:

This is in response to your letter of January 3, 2008.  There are several factual errors in your letter that may have led you to misunderstand our client's position.  We also reach different legal conclusions from the ones you have articulated.

Your understanding concerning Maggy London International, Ltd.'s ("Maggy London") product line is incorrect.  Its products are not limited to blouses and dresses, but rather include pants, skirts, jackets, coats, sweaters, shirts, tops and scarves.  All of these are sold bearing Maggy London's MUSE label.

While your client may intend that its use of the MUSE trademark designate a particular "style" or "fit" of its jeans, it cannot be argued that its use of MUSE is other than as a trademark for its products, albeit for a specific style of those products.  The use of the "Joe's Jeans" and/or "Joe's" designations together with our client's MUSE trademark does not obviate the likelihood of confusion occasioned by your client's use of the identical mark on women's clothing.

## KUDMAN TRACHTEN ALOE LLP

Jordan A LaVine, Esq
January 29, 2008
Page 2

As we are sure you are well aware, documented instances of actual confusion have never been held necessary to a finding of likelihood of confusion. It would remain to be seen whether actual confusion can be documented. In any event, we take issue with your conclusion that no confusion has occurred or is likely to occur in the future.

If your client were to continue using the MUSE trademark on women's jeans, it would effectively co-opt Maggy London's clear right to expand its existing line of MUSE apparel products, which does include pants. As you must understand, this prospect is unacceptable to Maggy London.

Your letter concluded by expressing the hope that an amicable resolution might be possible. If your client has a proposal that it believes would be useful, Maggy London will consider it. However, our client's patience is not limitless.

I look forward to hearing from you shortly.

Yours truly,

Thomas M. Furth