UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOE'S JEANS SUBSIDIARY, INC. and JOE'S            ECF Case
JEANS, INC.,
                                                  Case No.: 08 CV 3248 (RWS)
        Plaintiffs and Counterclaim-Defendants,

        v.

MAGGY LONDON INTERNATIONAL, LTD.,
                                    Defendant
and Counterclaim-Plaintiff.
-------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
FOR A PRELIMINARY INJUNCTION**

<br>

Thomas M. Furth (TF 0785)
Michelle S. Babbitt (MB 2497)
Matthew H. Cohen (MC 6513)
Kudman Trachten Aloe LLP
Attorneys for Plaintiff
Suite 4400 ● 350 Fifth Avenue
New York, New York 10118
212-868-1010

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS .............................................................................................................................................. 2

ARGUMENT .................................................................................................................................... 4

I PLAINTIFFS' MISUSE OF THE MUSE TRADEMARK IS LIKELY TO CONFUSE CONSUMERS ............................................................................................................................ 4

    A.  MUSE IS A STRONG MARK - IT IS ARBITRARY AS APPLIED TO WOMEN'S APPAREL ............................................................................................................................... 7

    B.  THE MARKS ARE IDENTICAL ................................................................................. 9

    C.  THE PARTIES' PRODUCTS ARE HIGHLY SIMILAR, IF NOT IDENTICAL ........ 9

    D.  MAGGY LONDON HAS THE RIGHT TO BRIDGE THE GAP INTO WOMEN'S JEANS. ...................................................................................................................... 10

    E  ACTUAL CONSUMER CONFUSION .......................................................................... 11

    F.  BAD FAITH ..................................................................................................................... 12

    G.  THE QUALITY OF THE PARTIES' PRODUCTS IS SIMILAR................................. 12

    H.  THE SOPHISTICATION OF THE RELEVANT CONSUMER GROUP IS NOT RELATIVELY HIGH ....................................................................................................... 13

II MAGGY LONDON IS SUFFERING IRREPARABLE HARM .......................................... 14

III THE BALANCE OF HARDSHIPS TIPS IN MAGGY LONDON'S FAVOR .................. 15

CONCLUSION ............................................................................................................................. 16

**PRELIMINARY STATEMENT**

Defendant Maggy London International, Inc. ("Maggy London"), respectfully submits this Memorandum of Law in support of its motion for an Order preliminarily enjoining the Plaintiffs, Joe's Jeans Subsidiary, Inc. and Joe's Jeans, Inc. ("collectively "Joe's") from infringing Maggy London's registered MUSE trademark.

Maggy London, an international manufacturer of fine women's clothing and accessories, distributes its products under many trademarks. Maggy London started using the mark MUSE in interstate commerce over eight years ago. Recently, and at least two years after Maggy London had obtained a U.S. trademark registration for its mark, Joe's started using the MUSE mark on a line of women's denim pants (jeans). As soon as Maggy London learned of the infringement, it immediately demanded that Joe's terminate its use of MUSE. Joe's has refused to do so; rather it has sought a declaratory judgment of non-infringement. It is therefore apparent that Joe's intends to continue selling MUSE women's denim pants in violation of Maggy London's rights. Maggy London cannot simply stand by, thereby permitting the value of its trademark and the goodwill it has established therein to evaporate. Rather, it respectfully requests that Joe's be restrained from further use of the MUSE mark in connection with its women's jeans or any other women's apparel. Analysis of Maggy London's rights and the nature of Joe's use of the identical mark on highly related goods leads to the inevitable conclusion that Maggy London is entitled to a preliminary injunction.

## FACTS

The relevant facts are set forth in the accompanying declaration of Camille Passaro, President of the Muse Division of Maggy London dated May 5, 2008 (the "Passaro Decl.") and will only be briefly set forth here.

Maggy London is an international manufacturer of a broad spectrum of women's apparel including clothing and accessories. Passaro Decl. at ¶ 3. Maggy London uses various trademarks as well as private labels for its various clothing and accessories products. *Id*. It is the owner of U.S. Trademark Registration No. 2,589,023, which was issued on July 2, 2002. *Id.* at

¶ 13. The registration covers the following goods: "Women's wearing apparel and sportswear, namely - dresses, blouses, pants, skirts, jackets, coats, sweaters, shirts, tops and accessories, namely - scarves."

Maggy London has been using the MUSE trademark for over eight years for a line of apparel and accessories that includes women's dresses, scarves, pants and other items. *See Id*. at ¶¶ 3, 7. The line of clothing is so successful that Maggy London has created a separate MUSE division. *Id*. at ¶ 8. Annual sales of the MUSE line are approximately $6.6 million and Maggy London has spent approximately $473,000 since 1999 to advertise and promote its MUSE products. *Id*. at ¶¶ 9, 10. Since adoption of the MUSE mark, sales have risen from $5.9 million in 2000 to almost $8.4 million in 2007. *Id.* at ¶ 10.

Maggy London is vigilant in protecting its trademark rights. It has successfully opposed trademark applications for marks similar to MUSE in other countries, based upon its International Registration. In late 2003, Maggy London became aware of efforts by Rocawear, a hip-hop clothing brand, to launch a new collection called MUSE. Upon being notified by Maggy London's attorneys that such use would infringe its rights, Rocawear immediately agreed to terminate use of the mark. *Id.* at ¶ 15.

2

In December 2007, Maggy London discovered that Joe's was using the MUSE mark in connection with denim clothing, in particular women's jeans. *Id*. at ¶ 16. Maggy London immediately demanded, in a letter sent on December 19, 2007, that Joe's terminate its infringement. *Id*. at ¶ 17. Joe's refused to do so, and instead commenced this action. *Id*. at

¶¶ 18, 19. Maggy London has counterclaimed for injunctive relief and damages for federal trademark infringement, federal unfair competition, and common law trademark infringement. .Joe's line of MUSE jeans are sold through the same channels of trade as Maggy London's products. *Id*. at ¶ 21. Both can be found in such stores as Nordstrom, a leading retailer. *Id*. at

¶ 22. In fact, a recent search performed on the Nordstrom.com website for the term "MUSE" resulted in the display of a webpage featuring both parties' products side-by-side. *Id.*

It is apparent from these facts that the likelihood of consumer confusion is high and that Maggy London's MUSE trademark is entitled to protection. Because Maggy London is suffering immediate, irreparable harm as a result of Joe's infringement, immediate preliminary relief is warranted.

**ARGUMENT**

To succeed on a motion for a preliminary injunction, the movant must demonstrate: (a) irreparable harm in the absence of injunctive relief, and (b) either (i) a likelihood of success on the merits, or (ii) the existence of sufficient serious questions and a balance of hardships tipping in the movant's favor. *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003). In a case under the Lanham Act, a showing of likelihood of confusion is sufficient to demonstrate irreparable harm and likelihood of success on the merits. *Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1314 (2d Cir. 1987).

Thus, the crucial inquiry in this case concerns whether there is a likelihood of confusion resulting from Joe's use of Maggy London's MUSE mark in connection with its jeans. As demonstrated herein, likelihood of confusion is manifest. Maggy London submits that it has met its burden and is entitled to immediate injunctive relief. Joe's must not be permitted to continue using the MUSE trademark on women's apparel.

**I
PLAINTIFFS' MISUSE OF THE MUSE TRADEMARK IS
LIKELY TO CONFUSE CONSUMERS**

Joe's misappropriation of Maggy London's MUSE mark creates a likelihood of confusion. Maggy London has been using the Mark in interstate commerce for women's apparel for over eight years, has had a registered trademark for almost six years, and the registration has become incontestable pursuant to Section 15 of the Trademark Act. Passaro Decl. at ¶¶ 7, 13, 14. In addition to numerous other types of women's clothing and accessories bearing the MUSE mark, Maggy London sells pants. *Id*. at ¶ 11. There are no denim pants in the MUSE line at present, but Maggy London has sold MUSE denim pants in the past. *Id.* Should Maggy London

4

wish to sell MUSE jeans, Joe's continued infringement of the MUSE mark would foreclose that option. Consumers, already confused as to which company makes MUSE jeans, would be further confused were there two providers of MUSE jeans. It is Maggy London, the senior user with established good will in the mark, which suffers, and will continue to do so, if the infringement continues.

By way of illustration of likely confusion, a search for MUSE on the Nordstrom.com website, a longstanding retailer of MUSE and other Maggy London products, displays ten selections of Maggy London MUSE products, and three selections of Plaintiffs' MUSE products. *Id*. at ¶ 22. Under all of the circumstances, there is no question that likelihood of confusion exists.

Second Circuit law requires that trial courts analyze likelihood of confusion based on the eight non-exclusive factors articulated by Judge Friendly in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), which have become known as the *Polaroid* factors. *See Natural Organics, Inc. v. Nutraceutical Corp*, 426 F.3d 576 (2d Cir. 2005) (reversing dismissal where district court failed to consider each *Polaroid* factor before concluding there was no likelihood of confusion); *Virgin*, 335 F.3d at 146 ("*Polaroid*…outlined a series of nonexclusive factors likely to be pertinent in addressing the issue of likelihood of confusion, which are routinely followed in such cases"). The eight *Polaroid* factors are as follows:

> (1) the strength of the…mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) actual consumer confusion between the two marks; (6) the defendant's intent in adopting its mark; (7) the quality of the defendant's product; and (7) the sophistication of the relevant consumer group.

*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000); *see also Virgin*, 335 F.3d at 146-47.

In analyzing the *Polaroid* factors, courts should balance all of the factors focusing overall

5

on whether consumers are likely to be confused. *Nabisco*, 220 F.3d at 46   One factor should not be dispositive and a court should not "treat the inquiry as a mechanical process by which the party with the greatest number of factors wins." *Id*.  Only six of the eight factors apply directly to the likelihood of confusion analysis in the preliminary injunction context; factors six and seven, namely the alleged infringer's intent and the quality of products, are more pertinent to issues such as harm to the mark owner's reputation and remedy rather than likelihood of confusion.  *Virgin*, 335 F.3d at 146-47.

The Second Circuit dealt with a set of circumstances similar to the instant case in *Virgin*. *Id*.  After the parent company of Virgin Megastores and Virgin Atlantic Airlines started its wireless telecommunications services in the United Kingdom, a new cell phone company filed intent-to-use trademark applications in the United States for the marks VIRGIN WIRELESS, VIRGIN MOBILE, VIRGIN COMMUNICATIONS, and VIRGIN NET.  *Id*. at 144.  At that time, Virgin's trademark registrations extended to numerous goods including "retail store services selling computers and electronic apparatus," but not wireless telecommunications or cell phones.  *Id*. at 143.  Over the next two years, Virgin applied for two trademark registrations, VIRGIN and VIRGIN MOBILE, in connection with telecommunications services, both of which were blocked due to the new company's prior pending applications.  *Id*. at 144.  After learning that the new company was operating kiosks under the VIRGIN WIRELESS name, but almost two years after learning of the new company's trademark applications, Virgin sued to, *inter alia*, enjoin the new company from using the Virgin mark in connection with telecommunications services. *Id*.

The Second Circuit, applying the *Polaroid* test, reversed the District Court's denial of a preliminary injunction, even issuing a summary order immediately after oral argument, with opinion to follow, directing the district court to enter a preliminary injunction. *Id*. at 143, n1.

The Second Circuit found that five of the *Polaroid* factors weighed in favor of Virgin, one was neutral (sophistication of consumers), and two were irrelevant (bad faith and quality of products). *Id*. at 146 – 152. Of particular importance, the Court noted that "[w]hile plaintiff had not sold telephones or telephone service prior to defendant's registration evincing intent to sell those items, plaintiff had sold quite similar items of consumer electronic equipment." *Id*. at 150.

Turning to the instant matter, analysis of all eight *Polaroid* factors clearly weighs in favor of likelihood of confusion, thus entitling Maggy London to a preliminary injunction.

### A.     MUSE is a Strong Mark - It is Arbitrary As Applied to Women's Apparel

Strength of the mark involves two concepts, "inherent distinctiveness" and "acquired distinctiveness." *Virgin*, 335 F.3d at 147. Inherent distinctiveness ranges from least to most distinctive as "generic, descriptive, suggestive and arbitrary or fanciful." *TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 93 (2d Cir. 2001). Arbitrary or fanciful marks, that is, marks that bear no relation to the products on which they are used, receive the most "broad, muscular protection." *Virgin*, 335 F.3d at 147. There is no question that in this case, the mark MUSE has absolutely no relation, not even suggestiveness, when applied to women's apparel and accessories. Therefore, the MUSE mark possesses the requisite inherent distinctiveness to merit broad protection. *Id*. at 148 ("[T]he more distinctive the mark, the greater the likelihood that the public, seeing it used a second time, will assume that the second use comes from the same sources as the first"). Acquired distinctiveness refers to the "recognition plaintiff's mark has earned in the market place as a designator of plaintiff's goods or services." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 131 (2d Cir.2004); *see also Virgin*, 335 F.3d at 148 ("If a mark has been long, prominently and notoriously used in commerce, there is a high likelihood that consumers will recognize it from its prior use").

7

There is no question that Maggy London began selling products in interstate commerce under the MUSE trademark at least five years before Joe's began using the identical mark. Passaro Decl. at ¶ 7. The Trademark Act provides that, even in the case of a weaker, descriptive mark, which MUSE clearly is not, "five years of substantially exclusive and continuous use thereof as a mark" may be "prima facie evidence that the mark has become distinctive." 15 U.S.C. § 2(f). Thus, even marks that are not, as is MUSE, inherently distinctive can "acquire" distinctiveness through use.

A registration on the Principal Register is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate…." 15 U.S.C. § 1115(a). In the case of a registration that has, as here, become incontestable, the registration "shall be conclusive evidence" of the above elements. 15 U.S.C. § 1115(b). Maggy London's MUSE registration is, therefore, conclusive evidence of its exclusive right to use MUSE on the goods listed therein.

Maggy London sells its MUSE line through many well-known and consumer traffic-heavy retailers such as Nordstrom and Macy's, as well as through such retailers' websites. Passaro Decl. at ¶¶ 21, 22. The MUSE line of clothing nets Maggy London revenues exceeding $$6.6 million annually, and is of such importance to the company, that MUSE is a division within Maggy London. *Id*. at ¶¶ 8-9. As the Second Circuit noted with respect to the strength of the Virgin mark, "[i]t is entitled as such to a broad scope of protection, precisely because the use of the mark by others in connection with stores selling reasonably closely related merchandise would inevitably have a high likelihood of causing consumer confusion." *Virgin*, 335 F.3d at 149. Similarly, Maggy London is clearly entitled to broad protection of its strong MUSE mark, because Joe's use of MUSE in connection with substantially similar goods in the same channels

of trade is bound to cause confusion.

The MUSE mark is a strong one, and therefore the first *Polaroid* factor favors Maggy London.

### B. The Marks Are Identical

When the primary and secondary users of a disputed mark use exactly the same mark, the second *Polaroid* factor must favor the primary user of the mark. *Id*. Both Joe's and Maggy London use precisely the same basic word mark MUSE without any stylistic difference. Although some of Joe's uses of the mark display as "The Muse," such an irrelevant and trivial difference cannot negate the fact that Joe's is using the identical mark for which Maggy London has already obtained an incontestable registration. *See Id*. Although Joe's has alleged in its complaint that its use of MUSE is merely a designation for a "fit," it can be seen from the prominent use on its product labels and website that it clearly functions as a trademark. *See* Passaro Decl. ¶¶ 25-26 and Exs. H-I. Therefore, the second *Polaroid* factor favors Maggy London.

### C. The Parties' Products Are Highly Similar, If Not Identical

The next *Polaroid* factor asks whether the competing products are so similar that consumers are likely to assume a common source of those goods. *Virgin*, 335 F.3d at 150 ("The closer the secondary user's goods are to those consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source"). The more similar the two products, the more likely the consumer is to be confused. Maggy London produces a number of various women's apparel items under the name MUSE including dresses, scarves, and most significantly, women's pants. Passaro Decl. at ¶ 11. The Plaintiffs, on the

9

other hand, distribute women's denim jeans, which are themselves women's pants.  Indeed, at www.merriam-webster.com, the dictionary definition of "blue jeans" is "pants usually made of blue denim."  If there were any doubt, jeans are pants.  Maggy London's trademark registration covers pants, and the registration is conclusive evidence of Maggy London's exclusive right to use the mark on this product.

Therefore, since the goods are virtually identical, the third *Polaroid* factor favors Maggy London.

### D.      Maggy London Has the Right to Bridge the Gap Into Women's Jeans.

The fourth *Polaroid* factor addresses the problem that arises where the parties' products were not so close when the secondary user began producing its products.  *See Polaroid*, 287 F.2d at 495 ("The problem of determining how far a valid trademark shall be protected with respect to goods other than those to which its owner has applied it, has long been vexing").  Thus, the primary user of the mark in many cases receives protection for its trademark with respect to goods that it does not already produce.  *Virgin*, 335 F.3d at 151 (""the trademark owner does not lose…merely because it has not previously sold the precise good or service sold by the secondary user"); *see also Scarves By Vera, Inc. v. Todo Sportswear, Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976) and cases cited therein ("We have heretofore protected the trademark owner's rights against use on related, non-competing products a result in accord with the realities of mass media salesmanship and the purchasing behavior of consumers").  It is the "proximity" of the respective goods that drives the analysis.  *Virgin,* 335 F.3d at 149, 151.

In this case, Maggy London sells MUSE pants, and Joe's sells women's denim pants.  Pants are pants, be they made of wool, cotton denim or some other fabric.  The "gap" to be bridged is miniscule, if it exists at all.  Even if the respective goods are not considered identical,

10

the Court should consider that several well-known apparel manufacturers such as Perry Ellis, Donna Karan, and Vera Wang, did not at first manufacture women's jeans, focusing on other types of women's apparel. However, all three of those well-known names now appear on women's jeans. Surely, Joe's could not suggest that another manufacturer could have started selling Perry Ellis, Donna Karan or Vera Wang jeans before each of those designers expanded its line to include denim. Likewise, a junior user could not usurp the "Wrangler" name and apply it to non-denim garments. Although Maggy London does not currently distribute women's denim jeans under the MUSE name, it has sold denim in the past, and it should not be precluded from expanding into women's jeans, and to use its MUSE mark on those jeans. *See Virgin*, 335 F.3d at 149, 151. Maggy London has spent the better part of a decade cultivating the MUSE mark, and shaping it into a symbol of high-quality women's clothing and accessories. Passaro Decl. at ¶¶ 7-12. It has spent significant sums to promote its mark and generate consumer awareness of this brand of women's clothing. *Id*. Permitting Joe's to trade on its goodwill, derived from substantial financial and temporal investment in MUSE, would vitiate the intellectual property rights Maggy London has accrued for over eight years.

Therefore, the fourth *Polaroid* factor favors Maggy London.

### E    Actual Consumer Confusion

Evidence of actual consumer confusion indicates a likelihood of consumer confusion. *Virgin*, 335 F.3d at 151. However, the law requires only a showing of likelihood of confusion, recognizing that instances of actual confusion are often difficult to identify. *Lois Sportswear U.S.A., Inc. v. Levis Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)**;** *Scarves By Vera,* 544 F.2d at 1175. Yet, as discussed above, when searched for "Muse," the Nordstrom website displays both Maggy London MUSE products and Joe's MUSE products **on the same web page**. *See*

11

Passaro Decl. ¶ 22 and Ex. G. When a loyal customer of Maggy London's MUSE products searches for MUSE on Nordstrom.com, she will undoubtedly believe that the makers of MUSE now also make women's jeans. Likewise, a consumer of MUSE jeans will mistakenly believe that the jean company now makes dresses, pants, and an array of other fine women's garments and accessories. This evidence of actual confusion is persuasive, and thus, the fifth *Polaroid* factor favors Maggy London.

### F.  Bad Faith

It is difficult to believe that Plaintiffs were unaware of Maggy London's trademark before adopting the MUSE mark. Moreover, even if one accepts Plaintiffs' claim that they first used MUSE in 2004, a simple search at that time would have revealed Maggy London's trademark registration, which by then was over two years old. A U.S. Trademark Registration constitutes constructive notice of the registrant's claim of ownership of the mark. 15 U.S.C. § 1072. Therefore, Joe's was, at the very least, unreasonably imprudent in adopting the mark. Although this sixth factor has been deemed of lesser relevance to the likelihood of confusion analysis in a motion for preliminary injunction, *Virgin*, 335 F.3d at 151-152, it nonetheless favors Maggy London.

### G.  The Quality of the Parties' Products is Similar

The more similar the quality of products for two similar marks, the more likely consumers will be confused as to the origin of those two products. *Banff, Ltd. v. Federated Dept. Stores, Inc.*, 841 F.2d 486, 492 (2d Cir. 1988). Maggy London's MUSE products and Plaintiffs' jeans are sold in the same channels of trade, and are at a similar price level. It is therefore likely that the quality of Plaintiffs' jeans is similar to that of Maggy London's MUSE products, or

would at least be perceived as such by consumers. Even though this factor is also less relevant to an analysis of likelihood of confusion in the preliminary injunction context, *Virgin*, 335 F.3d at 151-152, the seventh *Polaroid* factor favors Maggy London.

### H.     The Sophistication of the Relevant Consumer Group is Not Relatively High

Highly trained purchasers of products are much more likely to know the market and less likely than laymen to be misled or confused by similar trademarks. *Virgin*, 335 F.3d at 151. Unsophisticated customers, however, are more likely to be confused by similar marks for the same goods or the same marks for similar goods. *Id*. Application of this factor includes consideration of the price of the goods. Consumers typically exercise greater caution when purchasing high-priced items. However, the Second Circuit has noted that, "'where the products are identical and the marks are identical, the sophistication of buyers cannot be relied on to prevent confusion.' Hence, because both parties produce lines of quality apparel under strongly similar marks, this factor does not mitigate the likelihood of confusion." *Banff*, 841 F.2d at 492 (quoting *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1137 (2d Cir. 1979)).

In this case, while buyers of both products may be somewhat sophisticated, the proximity of the goods makes it unlikely that consumer sophistication is a sufficient factor to avoid confusion. Both Maggy London's MUSE products and Joe's MUSE jeans sell in the range of $100 - $200. *See* Passaro Decl., Ex. G. Consumers, when purchasing clothing in this price range, are not likely to spend much time distinguishing between two identical brands on display in the same area of the store. Therefore, the eighth *Polaroid* factor favors Maggy London.

## II

## <u>MAGGY LONDON IS SUFFERING IRREPARABLE HARM</u>

Irreparable harm is presumed once the movant has shown a likelihood of confusion. *Home Box Office*, 832 F.2d at 1314. Moreover, the Second Circuit has noted that a main tenet of the trademark laws is to "protect three interests which are present here: first*, the senior user's interest in being able to enter a related field at some future time*; second, his interest in protecting the good reputation associated with his mark from the possibility of being tarnished by inferior merchandise of the junior user; and third, the public's interest in not being misled by confusingly similar marks." *Scarves By Vera,* 544 F.2d at 1172 (emphasis added).

Without an injunction, the Plaintiffs will have free reign to continue to use the MUSE mark in connection with their denim pants. This will lead to two certainties: (1) consumers will be mistakenly led to believe that the same people that make MUSE dresses, pants and accessories also make MUSE jeans; and (2) Maggy London will be effectively precluded from utilizing the good will it has developed in the MUSE line to sell a similar product, namely women's jeans; although it has already built that good will through eight plus years of continued use of its mark for other women's apparel products including pants, and has actually sold denim pants in the past. This outcome would eviscerate Maggy' London's goodwill in MUSE. If Plaintiffs are permitted to trade off Maggy London's MUSE name in women's jeans, then nothing will stop them from expanding their misuse of the MUSE mark to denim skirts, shorts, overalls, one piece items and other various denim products, further encroaching on Maggy London's rights.

There is no adequate remedy at law. The damage to Maggy London's trademark rights flowing from Joe's acts cannot be undone and thus, Maggy London is entitled to a preliminary injunction.

**III**

**THE BALANCE OF HARDSHIPS TIPS IN MAGGY LONDON'S FAVOR**

Maggy London is harmed each day that consumers are exposed to MUSE apparel products over which it has no control. Having demonstrated that the *Polaroid* factors unequivocally point to a finding of likelihood of confusion, Maggy London is perforce entitled to preliminary relief. *Home Box Office*, 832 F.2d at 1314. Nonetheless, it is worthy of note that the balance of hardships also favors Maggy London. Joe's cannot hide behind any alleged hardship that would arise out of it being enjoined from selling infringing goods. Such hardship flows from its own acts; specifically, ignoring Maggy London's rights by adopting the identical MUSE mark for use on closely related goods. As noted above, Joe's was on constructive notice of Maggy London's rights by virtue of the registration of MUSE on the Principal Register. 15 U.S.C. § 1072. By failing to properly take heed of those rights, Joe's proceeded at its peril. It cannot now be heard to complain that it will suffer undue hardship from having to terminate use of a trademark to which it has no rightful claim.

## **CONCLUSION**

Based upon the foregoing, Maggy London respectfully requests that the Court enter a preliminary injunction in the form submitted herewith, thereby ensuring that it suffers no more harm to its valuable rights during the pendency of this action.

Dated: New York, New York
      May 5, 2008

                          Respectfully submitted,
                          **KUDMAN TRACHTEN ALOE LLP**
                          Attorneys for Defendant

      By:    /s/  Thomas M. Furth
                  Thomas M. Furth (TF 0785)
                  Michelle S. Babbitt (MB)
                  Matthew H. ohen (MC 6513)
                  350 Fifth Avenue, Suite 4400
                  New York, New York 10118
                  (212) 868-1010