UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOE'S JEANS SUBSIDIARY, INC., and JOE'S JEANS, INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> -against- <br><br> MAGGY LONDON INTERNATIONAL, LTD. <br><br> Defendant and Counterclaim Plaintiffs. | No. 08-cv-03248 |

## MEMORANDUM OF FACTS AND LAW
## IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

By:  /s/ John C. Re, Esq.

Abbe F. Fletman, Esq.
Jordan A. LaVine, Esq.
FLASTER/GREENBERG P.C.
1628 John F. Kennedy Blvd., 15th Floor
Philadelphia, PA  19103

and

John C. Re, Esq. (JR-7239)
ARONAUER, RE & YUDELL, LLP
444 Madison Avenue, 17th Floor
New York, NY 10022

Dated:  May 14, 2008

Attorneys for Plaintiffs/Counterclaim Defendants

## TABLE OF CONTENTS

Page

I.  INTRODUCTION AND PROCEDURAL HISTORY ...................................................1

    A.   Statement Of The Case And The Urgent Need For Expedited
        Discovery. .......................................................................................................1

    B.   Procedural History. ........................................................................................3

II.  STATEMENT OF FACTS RELEVANT TO PLAINTIFFS' MOTION FOR
    EXPEDITED DISCOVERY ............................................................................................4

    A.   Over The Past Twelve Years, Plaintiffs' "Joe's Jeans" Have Been
        Established As One Of The Most Well-Recognized And Sought-
        After Brands Of Premium Denim Jeans In The World...............................4

    B.   Contrary To Defendant's Assertion That Plaintiffs Only Began
        Using The Name "Muse" "Recently," Plaintiffs Have Used The
        Term "Muse" To Designate A Style Of Fit Since 2004.. ...........................5

III.  STATEMENT OF LAW AND ARGUMENT.................................................................6

    A.   Standards Governing Motions For Expedited Discovery. ...........................6

    B.   Plaintiffs Are Entitled To Expedited Discovery Under The Good
        Cause/Reasonableness Test. .........................................................................8

    C.   Plaintiffs Are Entitled To Expedited Discovery Under The Notaro
        Standard. .....................................................................................................11

        1.   Plaintiffs Will Suffer Significant Irreparable Harm If Not
            Permitted To Conduct Expedited Discovery Directed To
            The Conclusory And Demonstrably False Allegations
            Made In Support Of Defendant's Motion For Preliminary
            Injunctive Relief...............................................................................11

        2.   Plaintiffs Can Establish "Some Probability Of Success On
            The Merits," Particularly Given The Lack Of Any
            Evidence Of Customer Confusion Over The Three To Four
            Years The Parties Have Both Used The Term "Muse." ...............13

        3.   Expedited Discovery Will Not Cause Undue Hardship To
            Either Party. ....................................................................................14

III.  CONCLUSION ...............................................................................................................15

**TABLE OF AUTHORITIES**

Page(s)

FEDERAL CASES

*Ayyash v. Bank Al-Madina,*
    233 F.R.D. 325 (S.D.N.Y. 2005) ................................................................7, 8

*Behnam Jewelry Corp. v. Aron Basha Corp.,*
    No. 97-cv-3841, 1997 WL 639037 (S.D.N.Y. Oct. 14, 1997)................................6,9

*Edudata Corp. v. Scientific Computers, Inc.,*
    599 F. Supp. 1084 (D. Minn. 1984)................................................................6, 9

*Ellsworth Assocs. v. United States,*
    917 F. Supp. 841 (D.D.C. 1996) ................................................................6, 9, 15

*Federal Express Corp. v. Federal Espresso, Inc.,*
    No. 97cv1219, 1998 WL 690903 (N.D.N.Y. Sept. 30, 1998) ................................10

*Francis S. Denney, Inc. v. I.S. Lab, Inc.,*
    737 F. Supp. 247 (S.D.N.Y. 1990) ................................................................6

*Gidatex v. Campaniello Imports, Ltd.,*
    13 F. Supp.2d 417 (S.D.N.Y. 1998)................................................................14

*ImOn, Inc. v. ImaginOn, Inc.,*
    90 F. Supp.2d 345 (S.D.N.Y. 1998)................................................................14

*In re Websecure,*
    No. 97cv10662, 1997 WL 770414 (D. Mass. Nov. 26, 1997)............................9, 15

*Interscope Records v. Does 1-14,*
    No. 5:07-4107, 2007 WL 2900210 (D. Kan. Oct. 1, 2007)................................10

*Keybank, Nat'l Assn. v. Quality Payroll Sys., Inc.,*
    No. 06-3013, 2006 WL 1720461 (E.D.N.Y. June 22, 2006)................................8

*Moravek v. FNB Bancorp, Inc.,*
    No. 86cv4571, 1986 WL 7958 (N.D. Ill. July 9, 1986)................................6, 9

*Notaro v. Koch,*
    95 F.R.D. 403 (S.D.N.Y. 1982) ................................................................7, 8

*OMG Fidelity, Inc. v. Sirius Technologies, Inc.,*
    239 F.R.D. 300 (N.D.N.Y. 2006) ................................................................7, 8

*Optic-Electronic Corp. v. U.S.*,
  683 F. Supp. 269 (D.D.C. 1987) ..................................................................................9

*Pharmacia Corp. v. Alcon Laboratories, Inc.*,
  201 F. Supp.2d 335 (D.N.J. 2002) .............................................................................14

*Pod-Ners, LLC, v. Northern Feed & Bean of Lucerne Ltd. Liability Co.*,
  204 F.R.D. 675 (D. Colo. 2002) ..................................................................................9

*Quest Communications Int'l, Inc. v. Worldquest Networks, Inc.*,
  213 F.R.D. 418 (D. Colo. 2003) ................................................................................10

*Revlon Consumer Products Corp. v. Jennifer Leather Broadway*,
  858 F. Supp. 1268 (S.D.N.Y. 1994)..............................................................................6

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002)..................................................................................9

*Standard Investment Chartered, Inc. v. National Assocs. of Securities Dealers*,
  No. 07-cv-22014, 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007) ..........................7, 8

*Stern v. Cosby*,
  246 F.R.D. 453 (S.D.N.Y. 2007) .........................................................................7, 8, 9

*Warner Bros. Records, Inc. v. Does 1-4*,
  No. 2:07cv0424, 2007 WL 1960602 (July 5, 2007 D. Utah)..............................9, 10

## RULES

Federal Rule of Civil Procedure 26 ...................................................................2, 6, 8, 9

## OTHER

Moore's Federal Practice § 26.121 .....................................................................................6

8 Charles A. Wright, et al., Federal Practice and Procedure 2d § 2104 .........................14

John C. Re, Esq.
ARONAUER, RE & YUDELL, LLP
444 Madison Avenue, 17th Floor
New York, NY 10022
Attorney for Plaintiffs/Counterclaim Defendants

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOE'S JEANS SUBSIDIARY, INC., and JOE'S JEANS, INC., | |
|      Plaintiffs and Counterclaim Defendants, | No. 08-cv-03248 |
|      -against- | |
| MAGGY LONDON INTERNATIONAL, LTD. | |
|      Defendant and Counterclaim Plaintiffs. | |

## MEMORANDUM OF FACTS AND LAW
## IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

Plaintiffs/Counterclaim Defendants Joe's Jeans Subsidiary, Inc., and Joe's Jeans, Inc.

(hereinafter "Plaintiffs"), have moved the Court for an order granting expedited discovery in this

matter, and present the following memorandum of facts and law in support thereof.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

### A.    Statement Of The Case And The Urgent Need For Expedited Discovery

Defendant/Counterclaim Plaintiff Maggy London International, Ltd. (hereinafter

"Defendant") has moved this Court for the extraordinary relief of an order granting a

preliminary injunction against Plaintiffs' use of the trademark "Muse," a mark that Plaintiffs

have used to designate a particular style of their "Joe's" premium brand jeans since at least as

early as 2004.

The subject case is not at all typical of those where a party moves for a preliminary injunction. Unlike in a typical preliminary injunction matter, Plaintiffs have not only recently begun using their "Muse" mark; rather, Plaintiffs' have been using the mark in connection with a specific fit of their premium women's jeans since **2004**, thus making it difficult for Defendant to make the requisite showing of irreparable harm. Accordingly, while Defendant has not established and cannot establish that it is entitled to the extraordinary remedy of preliminary injunctive relief, expedited discovery is urgently needed to narrow the issues before the Court, investigate Defendant's unsubstantiated allegations, and to address the significant misstatements and exaggerations contained in Defendant's motion papers.

The only knowledge Plaintiffs have of Defendant's alleged use of the mark "Muse" is based upon Defendant's allegations. Accordingly, in anticipation of filing an opposition to Defendant's motion for preliminary injunction, Plaintiffs request that this Court exercise its discretion under Federal Rule of Civil Procedure 26(d) to grant the parties leave to take limited discovery on an expedited basis. Because expedited discovery is necessary for Plaintiffs to make complete submissions to the Court in opposing Defendant's motion for injunctive relief, Plaintiffs seek limited discovery on the issues raised by Defendant's motion: Defendant's selection and use of the "Muse" trademark; the range of products sold under Defendant's "Muse" trademark; Defendant's sales and advertising related to the "Muse" trademark; Defendant's trademark enforcement efforts; Defendant's marketing initiatives and target customers; the prices of Defendant's products; the retail outlets where Defendant's products are sold; when Defendant first learned of Plaintiffs' use of the "Muse" mark; and any evidence of actual confusion between the parties' marks and products. In addition, Plaintiffs seek to depose Ms. Camille Passaro, who

2

made a declaration in support of Defendant's motion, and any other knowledgeable witnesses who may testify at the preliminary injunction hearing.

Without expedited discovery, Plaintiffs' ability to effectively respond to the claims made in Defendant's motion papers will be severely inhibited, resulting in irreparable harm to Plaintiffs and inevitable damage to the reputation and goodwill that Plaintiffs have established in the "Muse" mark since it began using the mark in 2004.

### B.    Procedural History

On April 1, 2008, Plaintiff filed a complaint seeking a declaratory judgment that the continued use of the designation "Muse" as the name of a particular fit of its "Joe's" branded premium denim jeans does not infringe upon the Defendant's trademark rights in the mark "Muse" for women's apparel.  In response, Defendant filed counterclaims for trademark infringement, unfair competition and false designation of origin, arguing that: Plaintiffs should permanently be enjoined from use of the mark "Muse"; Plaintiffs products bearing the name "Muse" should be destroyed; Plaintiffs' Complaint should be dismissed; and damages, attorneys' fees and costs should be awarded to Defendant.

On May 5, 2008, notwithstanding Plaintiffs' continuous use of the designation "Muse" since at least as early as November, 2004, Defendant moved for preliminary injunctive relief. Defendant's motion seeks an order requiring Plaintiffs immediately to cease producing, marketing, selling, or distributing any "Muse" products; to file a report detailing how Plaintiffs have complied with the order; and to impound or destroy all "Muse" products in Plaintiffs' possession.  Plaintiffs' current deadline for opposing Defendant's motion is May 22, 2008.

3

## II.   STATEMENT OF FACTS RELEVANT TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

### A.   Over The Past Twelve Years, Plaintiffs' "Joe's Jeans" Have Been Established As One Of The Most Well-Recognized And Sought-After Brands Of Premium Denim Jeans In The World.

Since at least as early as July 1996, Plaintiffs have used the trademark "Joe's" in connection with their premium denim jeans. Declaration of Marc B. Crossman, at ¶5. Plaintiffs design, source and sell their "Joe's" and "Joe's Jeans" branded products to over 1,200 retail doors in the United States and abroad. *Id.* at ¶6. With competitive advantages and industry expertise in denim-wear and denim-related products, Plaintiffs' "Joe's" branded jeans have gained widespread recognition. *Id.* at ¶7. The brand is regularly featured in widely distributed fashion magazines such as *Cosmopolitan*, *InStyle*, *Glamour*, *Real Simple*, and *People*. Plaintiff's premium jeans are often identified in these magazines as being worn by well-known celebrities such as Tom Cruise, Will Smith, and Katie Holmes. *Id.* at ¶8. Plaintiffs' "Joe's" and "Joe's Jeans" brand jeans have received repeated and numerous mentions since the brand launched about twelve years ago. *Id.* at ¶7.

Plaintiffs' premium denim jeans sold under the "Joe's" brand are typically priced between $160 and $300. *Id.* at ¶9. Plaintiffs' products are designed internally and sourced to specification from suppliers primarily located in the United States, Mexico and Morocco. Plaintiffs' finished goods are then distributed directly to Plaintiffs' customers from its distribution center in Los Angeles. *Id.* at ¶10. Plaintiffs maintain third party showrooms in New York and Los Angeles to showcase these products. Plaintiffs have recently opened a branch office in Paris to distribute products in Europe. *Id.* at ¶11.

4

**B.    Contrary To Defendant's Assertion That Plaintiffs Only Began Using The Name "Muse" "Recently," Plaintiffs Have Used The Term "Muse" To Designate A Style Of Fit Since 2004.**

Building upon the success of its "Joe's" branded jeans, Plaintiffs were among the first in the premium jeans market to begin offering jeans in several different "fits" or "styles," *i.e.*, to correspond to the different body types and fit preferences of its customers. Accordingly, beginning in 2003, Plaintiffs adopted several named designations to correspond to its various fits, including, "Cigarette" (a straight leg jean), "The Honey" (a curvy fit jean), "Socialite" (a classic fit jean), "Rocker" (a flared bottom jean), "Twiggy" (a tall fit jean), "Provocateur" (a petite fit jean), and "Muse" (a high-waist fit jean). *Id*. at ¶12. Plaintiffs currently offer ten fits for their "Joe's" and "Joe's Jeans" branded jeans, of which "Muse" is one. *Id*. at ¶13.

Plaintiffs have used the "Muse" designation continuously since at least as early as November 2004, and Plaintiffs' "Muse" high-waist fit jean sold under the "Muse" designation has enjoyed substantial commercial success. Plaintiffs' approximate total sales of its 'Muse" fit of "Joe's" branded jeans since 2004 has been $24,838,000. *Id*. at ¶14.

Plaintiffs did not adopt the fits discussed in the preceding paragraph as stand-alone brands; rather, Plaintiffs adopted the designations as fit or style classifications falling under the already well-established and recognized "Joe's" and "Joe's Jeans" brands. *Id*. at ¶15. In fact, the fit names appear primarily only in Plaintiffs' promotional materials for the jeans and on the "tear-away" tags that are attached to the exterior of Plaintiffs' jeans, but removed after the jeans are purchased or worn. *Id*. at ¶16.

Purchasers of Plaintiffs' premium jeans are not attracted to the fit names; rather, they are attracted to the established "Joe's" and "Joe's Jeans" brands. *Id*. at ¶17. Purchasers of Plaintiffs' jeans use the various fit names merely to identify their preferred fit or style of the jeans sold

under the "Joe's" and "Joe's Jeans" brands and only become familiar with the fit names after

having become familiar with Plaintiffs' "Joe's" and "Joe's Jeans' brands.  *Id.* at ¶18.

## III.    STATEMENT OF LAW AND ARGUMENT

### A.    Standards Governing Motions For Expedited Discovery

This Court has broad power to grant expedited discovery under Federal Rule of Civil

Procedure 26(d), which gives courts wide discretion to manage the discovery process.  *See*

*Behnam Jewelry Corp. v. Aron Basha Corp.*, No. 97-cv-3841, 1997 WL 639037 (S.D.N.Y. Oct.

14, 1997) (stating that "District Courts have broad power to permit expedited discovery...and

such discovery is routinely granted in actions involving infringement and unfair competition.")

(*citing Revlon Consumer Products Corp. v. Jennifer Leather Broadway*, 858 F. Supp. 1268, 1269

(S.D.N.Y. 1994), *aff'd without opinion*, 57 F.3d 1062 (2d Cir. 1995); *Francis S. Denney, Inc. v.

I.S. Lab, Inc.*, 737 F. Supp. 247, 248 (S.D.N.Y. 1990)).

In addition, courts have held that expedited discovery is "particularly appropriate" where,

as here, preliminary injunctive relief is sought, because of the "expedited nature of injunctive

proceedings."  *Ellsworth Assocs. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996).  *See

also* Fed. R. Civ. P. 26(d) 1993 Advisory Committee Note (noting that early discovery "will be

appropriate in some cases, such as those involving requests for a preliminary injunction");

Moore's Federal Practice § 26.121 ("Expedited discovery is often appropriate in cases involving

preliminary injunctions"); *Moravek v. FNB Bancorp, Inc.*, No. 86cv4571, 1986 WL 7958 (N.D.

Ill. July 9, 1986) (merits of preliminary injunction motion "must be determined by the record

established through discovery and the preliminary injunction hearing"); *Edudata Corp. v.

Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984) (granting expedited

discovery for "[f]urther development of the record before the preliminary injunction hearing"),

*aff'd in part, dismissed in part*, 146 F.2d 429 (8th Cir. 1984).

Courts have adopted two different standards for determining whether to grant a motion for expedited discovery. This Court has recently adopted the flexible "good cause" standard, which simply examines the requested discovery in light of the entire record to determine whether the moving party has set forth a reasonable basis for ordering expedited discovery. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005); *Standard Investment Chartered, Inc. v. National Assocs. of Securities Dealers*, No. 07-cv-22014, 2007 WL 1121734, at *5 (S.D.N.Y. Apr. 11, 2007); *Stern v. Cosby*, 246 F.R.D. 453 (S.D.N.Y. 2007). Older cases had required the satisfaction of a four-part test similar to that for a preliminary injunction. *See, e.g., Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

> The *Ayyash* court, we submit, convincingly rejected the rigid test adopted in *Notaro*:

> [M]any recent cases reject Notaro and apply a more flexible "good cause" test. [citations omitted]. These latter cases seem to have the better of the argument. As the [Federal] Rules permit the Court to act by order, but do not elaborate on the basis for taking action, it seems that the intention of the rule-maker was to confide the matter to the Court's discretion, rather than to impose a specific and rather stringent test. As one court has pointed out, the Notaro test is similar to the analysis necessary to justify the far more dramatic decision to grant a preliminary injunction, and employing a preliminary-injunction type analysis to determine entitlement to expedited discovery makes little sense, especially when applied to a request to expedite discovery in order to prepare for a preliminary injunction hearing. [citation omitted] Rather, in deciding on a matter merely of regulating the timing of discovery, "it makes sense to examine the discovery request ... on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." [citation omitted] Accordingly, this Court will assess the application under the flexible standard of reasonableness and good cause ...

*Ayyash v. Bank Al-Madina*, 233 F.R.D. at 326-27. *See also Standard Investment Chartered, Inc.*, 2007 WL 1121734, at *5 (S.D.N.Y. Apr. 11, 2007) (noting that the *Notaro* test is not controlling in this District and finding it inapplicable); *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (describing recent cases' adoption of the flexible good cause standard and stating "I agree that the more flexible approach is the better approach.") (citations omitted); *OMG Fidelity, Inc. v.*

7

*Sirius Technologies, Inc.*, 239 F.R.D. 300, 304 (N.D.N.Y. 2006) (stating that "whatever vitality

*Notaro* may retain…its reasoning does not apply in this case.")

The *Notaro* decision had required satisfaction of a four-part test: "(1) irreparable injury,

(2) some probability of success on the merits, (3) some connection between the expedited

discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will

result without expedited discovery looms greater than the injury that the defendant will suffer if

the expedited relief is granted." *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

Plaintiffs submit that the more flexible *Ayyash* test is the correct one. In any event, under

either test, Plaintiffs have demonstrated the need for expedited discovery.

### B.    Plaintiffs Are Entitled To Expedited Discovery Under The Good Case/Reasonableness Test.

The good cause test adopted by this Court is "flexible" and guided by a "reasonableness

standard." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005); *Standard*

*Investment Chartered, Inc. v. National Assocs. of Securities Dealers*, No. 07-cv-22014, 2007 WL

1121734, at *5 (S.D.N.Y. Apr. 11, 2007). The standard "requires the party seeking the discovery

to prove that the requests are reasonable under the circumstances." *Keybank, Nat'l Assn. v.*

*Quality Payroll Sys., Inc.*, No. 06-3013, 2006 WL 1720461, at *4 (E.D.N.Y. June 22, 2006). *See*

*also Ayyash,* at 327 ("it makes sense to examine the discovery request ... on the entirety of the

record to date and the reasonableness of the request in light of all the surrounding

circumstances.") Good cause is established where the need for expedited discovery, in

consideration of the administration of justice, outweighs any prejudice to the responding party.

*Keybank, supra* (granting expedited discovery where injury to plaintiff in being unable to obtain

requested discovery was greater than injury to defendant in directing defendant to comply); *Stern*

*v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (finding that movant established good cause for

expedited discovery where "his desire to proceed on an expedited basis is reasonable in light of all the circumstances" and opposing party had not shown that prejudice would result).

Courts have held that a pending motion for preliminary injunction triggers the Rule 26(d) good cause standard. Because preliminary injunction motions are normally briefed and heard long before a Rule 26(f) conference occurs, but require a showing of facts, expedited discovery "better enable[s] the court to judge the parties' interests and respective chances for success on the merits." *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 429 (8th Cir. 1984). *See also In re Websecure*, No. 97cv10662, 1997 WL 770414 (D. Mass. Nov. 26, 1997) (granting motion for expedited discovery and denying motion for injunctive relief); *Optic-Electronic Corp. v. U.S.*, 683 F. Supp. 269, 271 (D.D.C. 1987) (same); *Moravek v. FNB Bancorp, Inc.*, No. 86cv4571, 1986 WL 7958 (N.D. Ill. July 9, 1986) (holding that expedited discovery was necessary prior to preliminary injunction hearing); *Ellsworth v. United States*, 917 F. Supp. 841 (D.D.C. 1996) (party was entitled to expedited discovery prior to resolution of request for injunctive relief).

Good cause for expedited discovery is also "frequently found in cases involving claims for infringement and unfair competition." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). *See also Behnam Jewelry Corp. v. Aron Basha Corp.*, No. 97-cv-3841, 1997 WL 639037 (S.D.N.Y. Oct. 14, 1997) (expedited discovery is "routinely granted" in actions involving infringement and unfair competition."); *Pod-Ners, LLC, v. Northern Feed & Bean of Lucerne Ltd. Liability Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (noting that good cause for expedited discovery often exists in cases involving infringement, unfair competition, and motions for preliminary injunctions); *Warner Bros. Records, Inc. v. Does 1-4,* No. 2:07cv0424, 2007 WL 1960602, at *1 (July 5, 2007 D. Utah) ("Good cause exists 'where a party seeks a

preliminary injunction…or where the moving party has asserted claims of infringement and unfair competition.'") (*quoting Quest Communications Int'l, Inc. v. Worldquest Networks, Inc.,* 213 F.R.D. 418, 419 (D. Colo. 2003)); *Interscope Records v. Does 1-14,* No. 5:07-4107, 2007 WL 2900210 (D. Kan. Oct. 1, 2007) (same).

Where, as here, a party moves for a preliminary injunction in a trademark infringement case, expedited discovery is recognized as necessary because the pace of normal pretrial procedure will be prejudicial. In these circumstances, it is proper to allow expedited discovery to precede the preliminary injunction hearing. *Federal Express Corp. v. Federal Espresso, Inc.,* No. 97cv1219, 1998 WL 690903 (N.D.N.Y. Sept. 30, 1998) (allowing expedited discovery in infringement case after party moved for preliminary injunction and expedited discovery, and then denying party's motion for preliminary injunction).

Plaintiffs have good cause for expedited discovery because of their need for sufficient discovery to oppose Defendant's motion for preliminary injunction. This need strongly outweighs any prejudice that Defendant would suffer in responding to Plaintiffs' limited discovery requests. As explained below in Section C.1, Plaintiffs will suffer significant, irreparable harm if not permitted to conduct expedited discovery on the issues raised in Defendant's motion for preliminary injunction. As explained in Section C.3, this harm outweighs any burden to Defendant. In light of the circumstances, the scope of discovery Plaintiffs seek is highly reasonable and there is good cause for limited expedited discovery.

C.     **Plaintiffs Are Entitled To Expedited Discovery Under The Notaro Standard.**

1. Plaintiffs Will Suffer Significant Irreparable Harm If Not Permitted To Conduct Expedited Discovery Directed To The Conclusory And Demonstrably False Allegations Made In Support Of Defendant's Motion For Preliminary Injunctive Relief.

Plaintiffs' successful opposition against Defendant's motion for injunctive relief hinges on its ability to secure information and documents concerning the expansive allegations made in support of Defendant's motion for preliminary injunctive relief. Specifically, Defendant's motion for preliminary injunction is supported by a sworn declaration of the President of the Muse Division of the Defendant in this action, Maggy London International, Inc. There is no question that this declarant is friendly to Defendant's cause. The Declarant speculates that customers would be confused by the parties' products in department stores and that "[a]n ordinary customer viewing these items on the Nordstrom website, would be confused into believing that all 13 items emanate from the same source." Declaration of Camille Passaro, ¶23. In addition, she asserts that customers are drawn to "The Muse" fit of Joe's Jeans by the "Muse" name, and not the "Joe's Jeans" trademark. *Id.* at ¶25. Plaintiffs will be irreparably harmed if not given the opportunity to depose this declarant or otherwise contest her statements through written discovery, especially given her potentially damaging, *but purely speculative*, testimony as to alleged likely and actual confusion among consumers between the parties' respective uses of the term "Muse." By way of example, this testimony is contradicted, at a minium, by the lack of any examples of actual customer confusion during the more than three years that the marks have coexisted in the marketplace, and may be contradicted by additional evidence obtained through expedited discovery.

Additionally, there are serious questions concerning the veracity of numerous statements and allegations in Defendant's motion for preliminary injunction. For example, Defendant

11

argues that its "Muse" mark is strong and arbitrary as applied to women's apparel even though its own exhibits state that the company is known primarily for its **dresses** and Defendant has spent only $473,000 in marketing its products in the nine years they have been sold. *See* Defendant's Memorandum, p. 7. Defendant argues that the parties' uses of the term "Muse" are *identical*, despite the fact that Plaintiffs have only used the term to designate a particular style of fit of jeans and Defendant has admitted that the "Muse" brand does not currently include jeans, but appears to consist primarily of dresses, skirts, blouses, shirts and sweaters. *Id*. at 9. Moreover, the advertisements included with Defendant's motion papers indicate that the target demographic for Defendant's apparel are aged 28-60, which is quite different from the demographic for Plaintiff's premium women's jeans. Defendant's advertisements addtionally suggest that the nature of and designs of its "Muse" products are quite different from Plaintiffs' premium jeans. Defendant argues that there is evidence of actual customer confusion, but fails to identify any such evidence and, if there is in fact a likelihood of confusion between the marks, Defendant provides no explanation of why it did not become aware of Plaintiff's "Muse" designation until December 2007, *i.e.*, more than three years after Plaintiffs' began using the style designation. *Id*. at 11-12. Finally, Defendant argues that the sophistication of the relevant customer group is not high, but admits the average price of its products are more than $100 per item. *Id*. at 13.

To adequately respond to these allegations, Plaintiffs require additional discovery. The knowledge and documents underlying Defendant's statements and allegations regarding these issues <u>are solely within the possession of Defendant</u>. Without an opportunity to further explore these matters through expedited discovery, Plaintiffs cannot effectively contest Defendant's allegations, resulting in irreparable harm to Plaintiffs. Coupled with Defendant's unreasonable

delay in contesting Plaintiffs' use of the term "Muse," there is a strong justification for this Court to grant expedited discovery in the interest of full disclosure prior to granting the extraordinary remedy of a preliminary injunction.

2. Plaintiffs Can Establish "Some Probability Of Success On The Merits," Particularly Given The Lack Of Any Evidence Of Customer Confusion Over The Three To Four Years The Parties Have Both Used The Term "Muse."

Plaintiffs submit that expedited discovery will permit Plaintiffs to secure evidence that will allow Plaintiffs to demonstrate clearly that there is no likelihood of confusion between the respective marks. The "Joe's" and "Joe's Jeans" brands are one of the most recognized and established brands of denim jeans in the world. Declaration of Marc B. Crossman, at ¶¶6-8. Purchasers of Plaintiffs' premium jeans are not attracted to the fit names, but the established "Joe's" and "Joe's Jeans" brands. Id. at ¶17. Customers become familiar with fit names such as "Muse" only after having first become familiar with Plaintiffs' "Joe's" and "Joe's Jeans' brands, and use the fit names only to identify their preferred style or fit. Id. at ¶18. These facts indicate that confusion is extremely unlikely. In addition, Plaintiffs have used the "Muse" designation successfully and continuously since at least as early as November 2004, with no evidence of customer confusion. Id. at ¶¶14-18.

Furthermore, there is *no evidence* that supports Defendant's claim that customers buy the "Muse" fit of "Joe's" Jeans because of some familiarity with Defendant's line of different types of apparel. The term "Muse" is not so unique or exclusively used by Defendant in the apparel industry to make Defendant's rights in the "Muse" mark strong enough to preclude Plaintiffs' use of this designation as a style of fit for denim jeans.

Thus, while there is a high probability that Plaintiffs will succeed on the merits based on these very initial findings, expedited discovery is needed in order for Plaintiffs to fully develop their defenses and claims in light of the broad allegations made in Defendant's motion papers.

13

The limited expedited discovery sought by Plaintiffs will enable Plaintiffs to rebut Defendant's allegations.

### 3. Expedited Discovery Will Not Cause Undue Hardship To Either Party.

Expedited discovery will not cause undue hardship or prejudice to either party in this proceeding. At the outset, Defendant unreasonably delayed in contesting Plaintiffs' use of the term "Muse" to designate a particular style of fit. Defendant's delay weighs against any showing of irreparable harm by Defendant. *See Pharmacia Corp. v. Alcon Laboratories, Inc.*, 201 F. Supp.2d 335, 383 (D.N.J. 2002) ("By the summer and fall of 1999, [Plaintiffs] had to have known of the [trademark], even if [Plaintiffs'] delay is measured only from April 2000, when it concedes it knew of the [trademark]. Such a delay--one full year--knocks the bottom out of any claim of immediate and irreparable harm"); *ImOn, Inc. v. ImaginOn, Inc.*, 90 F. Supp.2d 345, 350 (S.D.N.Y. 1998) (delay of 18 weeks precludes finding of irreparable harm); *Gidatex v. Campaniello Imports, Ltd.,* 13 F. Supp.2d 417, 419-420 (S.D.N.Y. 1998) (delay of 4 1/2 months precludes finding of irreparable harm). Since Defendant already waited several years before bringing its motion for preliminary injunction, the delay caused by conducting expedited discovery will not create an undue hardship on Defendant.

In addition, the primary purpose of the time interval traditionally provided by the Federal Rules between the commencement of an action and the commencement of discovery is to provide defendants with sufficient time within which to procure counsel and acquaint themselves with the facts of the case. *See* 8 Charles A. Wright, et al., Federal Practice and Procedure 2d § 2104, at 49 & n.18. Defendant is already represented by experienced counsel, and as described in Defendant's motion for a preliminary injunction, Defendant's counsel began asserting arguments on Defendant's behalf and sending correspondence to Plaintiffs regarding the mark in December, 2007. The limited discovery sought herein will not unduly burden defendants, and

Plaintiffs' counsel, of course, will cooperate in good faith with Defendant's counsel to resolve any unforeseen reasonable difficulties that may arise in responding to the expedited discovery requests.

The discovery Plaintiffs' seek is limited, and Plaintiffs will make every effort to ensure that the expedited discovery is particularized and tailored to the claims at issue and not unduly burdensome. *See, e.g., Ellsworth*, 917 F. Supp. at 844 (granting plaintiffs' motion for expedited discovery where plaintiffs had narrowly tailored their request); *In re WebSecure,* No. 97cv10662, 1997 WL 770414 (D. Mass. Nov. 26, 1997) (granting plaintiffs' request for expedited discovery upon finding such request both "particularized" and "necessary...to prevent undue prejudice" to the plaintiffs).  The discovery sought here is reasonably tailored to issues raised by Defendant's motion for preliminary injunction.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion for expedited discovery be granted.

Respectfully submitted,

 /s/ **John C. Re, Esq.**

Abbe F. Fletman, Esq.
Jordan A. LaVine, Esq.
FLASTER/GREENBERG P.C.
1628 John F. Kennedy Blvd., 15th Floor
Philadelphia, PA  19103

and

John C. Re, Esq.
ARONAUER, RE & YUDELL, LLP
444 Madison Avenue, 17th Floor
New York, NY 10022
Attorneys for Plaintiffs/Counterclaim Defendants

Dated: May 14, 2008

15