Sweet TJ

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/08



RECEIVED
AUG 0 4 2008
JUDGE SWEET CHAMBERS

John C. Re, Esq.
ARONAUER, RE & YUDELL, LLP
444 Madison Avenue, 17th Floor
New York, NY 10022

Abbe F. Fletman, Esq.
Jordan A. LaVine, Esq.
FLASTER/GREENBERG P.C.
1628 John F. Kennedy Blvd., 15th Floor
Philadelphia, PA 19103

Attorneys for plaintiffs Joe's Jeans, Inc.
and Joe's Jeans Subsidiary, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOE'S JEANS SUBSIDIARY, INC., and JOE'S JEANS, INC.,

    Plaintiffs and Counterclaim Defendants,

    -against-

MAGGY LONDON INTERNATIONAL, LTD.

    Defendant and Counterclaim Plaintiff.

No. 08-cv-03248 (RWS)
ECF Case

**STIPULATION AND ORDER
TO AMEND COMPLAINT**

**IT IS HEREBY STIPULATED AND AGREED,** by and between the parties in the

above-captioned matter, that plaintiffs may file the Amended Complaint attached hereto.

**Plaintiffs Joe's Jeans, Inc.
and Joe's Jeans Subsidiary, Inc.**

ARONAUER, RE & YUDELL, LLP

By:_____
    John C. Re (JR-7239)
444 Madison Avenue, 17th Floor
New York, NY 10022
215-755-6000

Dated: ~~July , 2008~~  August 1, 2008

    and

Abbe F. Fletman, Esq.
Jordan A. LaVine, Esq.
FLASTER/GREENBERG P.C.
1628 John F. Kennedy Blvd., 15th Floor
Philadelphia, PA 19103
215-279-9393


**Defendant Maggy London**
**International, Ltd.**

KUDMAN TRACHTEN, ALOE, LLP

By: _____    Dated: July 1, 2008    Aug 1, 2008
    Thomas M. Furth (TF-0785)
    Michelle S. Babbitt (MB-2497)
The Empire State Building
350 Fifth Avenue, Suite 4400
New York, NY 10118
212-868-1010


        This stipulation having been considered and approved by the Court, it is therefore

ORDERED that plaintiffs are granted leave to amend the complaint.


**IT IS SO ORDERED:**

_____    Dated: August 19, 2008
Hon. Robert W. Sweet, U.S.D.J.
Paul A. Crotty
Part I

2

John C. Re, Esq.
ARONAUER, RE & YUDELL, LLP
444 Madison Avenue, 17th floor
New York, NY 10022

Abbe F. Fletman, Esq.
Jordan A. LaVine, Esq.
FLASTER GREENBERG PC
1628 JFK Blvd., 15th floor
Philadelphia, PA 19103

Attorneys for plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK .

|  |  |
|---|---|
| JOE'S JEANS SUBSIDIARY, INC., and JOE'S JEANS, INC., | : |
| Plaintiffs and Counterclaim Defendants, | : No. 08-cv-03248 |
| -against- | : |
| MAGGY LONDON INTERNATIONAL, LTD. | : |
| Defendant and Counterclaim Plaintiff. | : |

## FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs, Joe' Jeans Subsidiary, Inc and Joe's Jeans, Inc. (collectively "Joe's Jeans"),

bring this First Amended Complaint against Maggy London International, Ltd. ("Maggy

London") for a declaratory judgment that plaintiffs' continued use of the designation "Muse" as

the name of a particular fit of plaintiffs' "Joe's" branded premium denim jeans does not infringe

Maggy London's alleged trademark rights in the mark "Muse" for women's apparel, including

dresses, blouses, and sweaters. In this amended complaint, Joe's Jeans further alleges that

Maggy London procured the alleged trademark registration for the "Muse" Trademark, Reg. No.

2,589,023, through the commission of fraud on the U.S. Patent and Trademark Office. The

1

registration should therefore be deemed invalid and ordered canceled. In support of these claims, plaintiffs allege:

## NATURE OF THE ACTION

1.    This is an action for a declaratory judgment under 28 U.S.C. § 2201. Joe's Jeans seeks a declaration from this Court that its longstanding and continued use of the style designation "Muse" as the name of a particular fit of premium denim jeans: (1) does not infringe Maggy London's alleged trademark rights under 15 U.S.C. § 1114(1)(a); (2) does not constitute false designation of origin under 15 U.S.C. § 1125(a); and (3) does not constitute unfair competition under state law. Joe's Jeans further seeks a declaration that Maggy London achieved the registration of the "Muse" trademark with the U.S. Patent and Trademark Office through the commission of fraud and that the registration should therefore be deemed invalid and ordered canceled under 15 U.S.C. §§ 1064 and 1119.

2.    Plaintiffs also seek a declaration of equitable estoppel prohibiting the enforcement against Joe's Jeans of any alleged trademark rights Maggy London claims it has in any mark incorporating the word "Muse." Finally, Joe's Jeans seeks its attorneys' fees, expenses, and costs incurred in this action, and any other relief the Court deems just and proper.

## JURISDICTION AND VENUE

3.    This Court has original jurisdiction over Joe's Jeans' federal claims pursuant to 28 U.S.C. § 1331, § 1338, and § 2201.

4.    This Court has subject matter jurisdiction over Count V of this amended complaint as it consists of a claim for cancelation of a federal trademark registration pursuant to the Lanham Act, 15 U.S.C. § 1119.

2

5.      This Court has supplemental jurisdiction over Joe's Jeans' non-federal claims, pursuant to 28 U.S.C. § 1367, because these claims are so related to the federal claims that they form a part of the same case or controversy under Article III of the United States Constitution.

6.      This Court also has original jurisdiction over this entire action, pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Maggy London because, *inter alia*, (1) Maggy London's principal place of business is located in this district, (2) defendant has transacted business within this state and district, and (3) defendant has otherwise made and established contacts with this state and district sufficient to permit the exercise of personal jurisdiction.

8.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to these claims occurred in this district and a substantial part of the property that is the subject of the action is situated in this district.

## THE PARTIES

9.      Plaintiff Joe's Jeans Subsidiary, Inc. is corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5901 South Eastern Avenue, Commerce, California 90040.

10.     Plaintiff Joe's Jeans, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5901 South Eastern Avenue, Commerce, California 90040.

11.     On information and belief, Defendant Maggy London International, Ltd. is a New York corporation organized and existing under the laws of the State of New York with its principal place of business at 530 Seventh Avenue, New York, New York 10018.

3

## FACTS COMMON TO ALL COUNTS OF COMPLAINT

12.     Plaintiffs design, source and sell their "Joe's" and "Joe's Jeans" branded premium apparel products to more than 1,200 retail stores in the U.S. and abroad. With its competitive advantages and industry expertise in denim-wear and denim-related products, Joe's Jeans produces one of the most recognized and sought-after premium denim brands in the world. Joe's Jeans designs its own products and sources them to specification from suppliers primarily located in the U.S., Mexico and Morocco. Joe's Jeans' finished goods are then distributed directly to its customers from its distribution center in Los Angeles. Plaintiffs maintain third party showrooms in New York and Los Angeles to showcase their products for their customers. Plaintiffs have recently opened a branch office in Paris to distribute their products in Europe.

13.     Since at least as early as July 1996, Joe's Jeans has used the trademark "Joe's" in connection with its denim products discussed in the preceding paragraph. Plaintiffs' premium denim jeans sold under the "Joe's" brand are typically priced between $160 and $300. Plaintiffs' "Joe's" and "Joe's Jeans" brand jeans have received repeated and numerous mentions since the brand was launched and the brand is regularly featured in widely distributed and read fashion magazines such as *Cosmopolitan, InStyle, Glamour, Real Simple,* and *People.* Oftentimes in such magazines, plaintiffs' premium jeans are identified as being worn by well-known celebrities such as Tom Cruise, Will Smith, and Katie Holmes.

14.     Building upon the success of its "Joe's" branded jeans, plaintiffs were among the first companies in the premium jeans market to begin offering, several years ago, their jeans in several different "fits" or "styles," *i.e.*, to correspond to the different body types and fit preferences of its customers. Accordingly, Joe's Jeans adopted several named designations to correspond to its various fits, including, "Cigarette" (a straight-leg jean), "The Honey" (a curvy

4

fit jean), "Socialite" (a classic fit jean), "Rocker" (a flared bottom jean), "Twiggy" (a tall fit jean), "Provocateur" (a petite fit jean), and "Muse" (a high-waist fit jean).

15.    Plaintiffs did not adopt the fits discussed in the preceding paragraph as stand-alone brands; rather, Joe's Jeans adopted the designations as fit or style classifications falling under the already well established and recognized "Joe's" and "Joe's Jeans" brands. In fact, the fit names appear primarily only in Joe's Jeans' promotional materials for its jeans, on the "tear-away" tags that are attached to the exterior of plaintiffs' jeans, but removed after the jeans are purchased or worn, and on labels sewn inside the jeans that include the "Joe's" trademark.

16.    Purchasers of plaintiffs' premium jeans are not attracted to the fit names; rather, they are attracted to the established "Joe's" and "Joe's Jeans" brands. Purchasers of plaintiffs' jeans use the various fit names merely to identify their preferred fit or style of the jeans sold under the "Joe's" and "Joe's Jeans" brands and only become familiar with the fits names after having become familiar with plaintiffs' "Joe's" and "Joe's Jeans' brands.

17.    Plaintiffs currently offer ten fits for their "Joe's" and "Joe's Jeans" branded jeans, of which "Muse" is one.  A representative example of plaintiffs' use of their fit names is shown in Exhibit A to the amended complaint.

18.    Since at least as early as November 2004, plaintiffs have used the "Muse" style fit designation, as discussed above. Plaintiffs have used the "Muse" designation continuously since that time and plaintiffs' "Muse" high-waist fit jean sold under the "Muse" designation has enjoyed substantial commercial success.

19.    Maggy London's Muse division designs women's apparel such as floral-patterned dresses, blouses, and skirts. Maggy London's apparel is sold in the dress departments of retail channels such as Nordstrom's, Macy's and similar women's clothing stores. Maggy London does not sell, nor has it since 2002 sold jeans or more than isolated denim products. Maggy

5

London's Muse division has not even sold any pants for at least the last five quarters. Maggy London's products sold at Nordstrom's, for example, consist only of patterned dresses.

20.     Maggy London uses its alleged trademark "Muse" in connection with women's apparel, including patterned dresses, blouses, and skirts. Maggy London is the record owner of Registration No. 2,589,023, issued July 2, 2002, for its alleged "Muse" trademark for the following goods: women's wearing apparel and sportswear, namely, dresses, blouses, pants, skirts, jackets, coats, sweaters, shirts, tops and accessories, namely scarves.

21.     At no point since Joe's Jeans adopted the "Muse" style designation and began using the designation in November 2004 has Joe's Jeans or anyone affiliated with plaintiffs encountered Maggy London or its alleged "Muse" trademark in the marketplace of premium denim jeans. Likewise, Joe's Jeans is wholly unaware of any instances of consumer confusion arising as a result of Maggy London's use of the "Muse" style fit designation with its particular high-waist fit of its "Joe's" branded denim jeans and Maggy London's use of its alleged "Muse" trademark in connection with its women's dresses and blouses.

22.     Between Joe's Jeans' commencement of its use of the "Muse" style fit designation in November 2004 and December 2007, neither Maggy London nor any other entity objected to Joe's Jeans' use of the "Muse" style fit designation.

23.     On December 19, 2007, Maggy London's counsel sent a letter to Joe's Jeans alleging that its use of the "Muse" style fit designation constituted infringement of Maggy London's alleged "Muse" trademark and was "likely to cause confusion in the marketplace concerning the source or sponsorship" of Joe's Jeans' premium denim jeans. In the letter, Maggy London's counsel demanded that Joe's Jeans "terminate all use of the mark 'Muse' or any variation thereof" and to "confirm such termination of use . . . immediately in writing." Counsel for Maggy London additionally demanded that Joe's Jeans provide it with information

6

on the number of units sold and revenue generated by products sold under the "Muse" designation. A copy of the December 19, 2007 letter is attached as Exhibit B.

24.     Following their receipt of the December 19, 2007 letter, plaintiffs forwarded the letter to their outside counsel to contact counsel for Defendant. Joe's Jeans' outside counsel subsequently wrote a letter dated December 26, 2007 to counsel for Maggy London indicating that Joe's Jeans would respond after January 1, 2008 and asking, in the meantime, for Maggy London to provide more information on the specific types of clothing Maggy London sold under its alleged "Muse" trademark. A copy of the December 26, 2007 letter is attached as Exhibit C.

25.     On January 3, 2008, counsel to Joe's Jeans sent Maggy London's counsel a substantive written response to Maggy London's December 19, 2007 letter wherein counsel for Joe's Jeans highlighted the differences between the nature of Joe's Jeans' use of its "Muse" style fit designation and its premium denim jeans sold under the "Muse" designation and the nature of Maggy London's use of the alleged "Muse" trademark and Maggy London's products sold under the alleged "Muse" mark. In particular, plaintiffs' counsel stressed that Joe's Jeans' "Muse" designation is never used as a stand-alone trademark or with products other than plaintiffs' "Joe's" brand premium jeans. Plaintiffs' counsel also informed Maggy London's counsel that Joe's Jeans had used the "Muse" style designation since at least as early as November 2004 and that no instances of actual confusion had come to Joe's Jeans attention in the more than three years of plaintiffs' use of the style fit designation. Joe's Jeans' counsel concluded in the letter, therefore, that plaintiffs did not agree with Maggy London that there was a likelihood of confusion between the marks. A copy of the January 3, 2008 letter is attached as Exhibit D.

26.     On January 29, 2008, nearly a month after receiving plaintiffs' counsel's January 3, 2008 letter, Maggy London's counsel responded to plaintiffs' counsel's January 3 letter. In its January 29 letter, Maggy London's counsel reiterated Maggy London's belief that there is a

7

likelihood of confusion between the marks and dismissed the fact that there had been no known instances of actual confusion in the more than three years that the marks had coexisted. A copy of the January 29, 2008 letter is attached as Exhibit E.

27.    Between January 29, 2008 and the initiation of the lawsuit, counsel for Joe's Jeans and Maggy London had several telephone conversations during which they discussed the possible resolution of the dispute, including how the parties might continue to be able to use their respective marks, as they have for more than three years, but Maggy London, through its counsel, rejected plaintiffs' proposals and indicated that a lawsuit would be initiated if Joe's Jeans did not immediately cease its use of the "Muse" style designation with premium denim jeans.

28.    Defendant's threatened litigation interfered with plaintiffs' ability to continue its use of its "Muse" style fit designation and its legitimate business operations and so plaintiff Joe's Jeans Subsidiary, Inc. filed its complaint for declaratory relief on April 1, 2008.

29.    Defendant answered the complaint and filed its counterclaims on May 1, 2008. The parties also stipulated, on April 30, 2008, that Joe's Jeans, Inc. would be added as a plaintiff and counterclaim defendant.

30.    Maggy London filed its motion for a preliminary injunction on May 5, 2008. The parties subsequently agreed in a stipulation dated May 22, 2008 to a period of expedited discovery to be conducted in advance of plaintiffs' deadline for filing papers responsive to the motion for a preliminary injunction.

## COUNT I
## DECLARATION OF NON-INFRINGEMENT UNDER THE LANHAM ACT

31.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 30.

8

32.    A justiciable and actual controversy exists before this Court with respect to whether plaintiffs' continued use of the "Muse" style fit designation infringes any of defendant's alleged rights under the Lanham Act, 15 U.S.C. § 1051 et. seq.

33.    Plaintiffs' continued use of the style fit designation "Muse" with their premium denim jeans is not likely to cause confusion as to the source or sponsorship of plaintiffs' premium denim jeans and defendant's alleged "Muse" branded women's apparel.

34.    While each of the marks at issue consists of the term "Muse," the marks are used by plaintiffs and defendant in very different manners and the term "Muse" is not so unique or exclusively used by defendant in the apparel industry that defendant's rights in the "Muse" mark are strong enough to preclude plaintiffs' use of the "Muse" designation with products different from those sold by defendant under its alleged "Muse" mark.

35.    Defined as "the source of an artist's inspiration," e.g., "Picasso was his muse," or as "one of the nine goddess daughters of Zeus and Mnemosyne," defendant's alleged "Muse" mark is, at best, a highly suggestive trademark for women's apparel products and is not entitled to a wide scope of trademark protection.

36.    Plaintiffs sell only premium denim jeans under their "Muse" style fit designation. Such goods are distinct from defendant's patterned dresses and blouses sold under defendant's alleged "Muse" trademark, thus preventing any likelihood of confusion arising among the relevant consumers for the products sold under the marks. The marketplace of premium denim jeans is additionally a distinct niche of the women's apparel market that does not overlap with the market within which defendant's products are sold.

37.    Neither plaintiffs' premium denim jeans nor defendant's dresses and blouses are inexpensive goods that would be purchased on impulse. The respective products are likely to be purchased by discerning and sophisticated purchasers of expensive women's clothing that make

9

their purchases carefully and only after deliberation, thus additionally eliminating the possibility of any confusion resulting from plaintiffs' continued use of its "Muse" style fit designation with premium denim jeans and defendant's use of its alleged "Muse" trademark with women's blouses and dresses.

38.    The parties' concurrent use of their marks since at least November 2004 without any known instances of actual confusion arising between the marks attests to the fact that there is no likelihood of confusion between the marks.

39.    Plaintiffs' continued use of "Muse" as the name of a particular style of denim jeans under the "Joe's" brand of premium jeans does not infringe any rights of defendant under 15 U.S.C. § 1114(1)(a).

40.    Plaintiffs request a declaration from the Court that their continued use of the "Muse" style fit designation does not infringe any of defendant's alleged rights under 15 U.S.C. § 1114(1)(a).

**COUNT II**
**DECLARATION OF NO FALSE**
**DESIGNATION OF ORIGIN UNDER THE LANHAM ACT**

41.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 40.

42.    A justiciable and actual controversy exists before this Court with respect to whether plaintiffs' continued use of its "Muse" style fit designation infringes any of defendant's alleged rights under 15 U.S.C. § 1125(a).

43.    Plaintiffs' continued use of their "Muse" style fit designation is not likely to cause confusion as to source of sponsorship and does not constitute a false designation of origin under 15 U.S.C. § 1125(a).

10

44.     As discussed in paragraphs 30 and 31, *supra*, defendant lacks strong enough rights in its alleged "Muse" trademark to preclude plaintiffs' use of its "Muse" style fit designation as the name of a particular fit of plaintiffs' premium denim jeans.

45.     Plaintiffs request a declaration from the Court that their continued use of the "Muse" style fit designation does not constitute unfair competition and/or a false designation of origin under 15 U.S.C. § 1125(a).

## COUNT III
## DECLARATION OF NO UNFAIR COMPETITION UNDER STATE COMMON LAW

46.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 45.

47.     A justiciable and actual controversy exists before this Court with respect to whether plaintiffs' continued use of their "Muse" style fit designation for premium denim jeans constitutes unfair competition under state common law.

48.     Plaintiffs' continued use of the "Muse" style fit designation is not likely to cause confusion as to the source or sponsorship of defendant's "Muse" products.

49.     Plaintiffs request a declaration from the Court that their continued use of the "Muse" style fit designation does not violate New York state common law.

## COUNT IV
## DECLARATION OF EQUITABLE ESTOPPEL PROHIBITING ENFORCEMENT

50.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 49

51.     Plaintiffs relied to their detriment on defendant's unreasonable delay in asserting its claims against plaintiffs. Defendant's delay in asserting its claims for more than three years after plaintiffs began using their "Muse" style fit designation, which use was open an notorious and was known or should have been known by defendant, is not justified or excused in law or in equity.

11

52.  By its conduct complained of herein, defendant has relinquished any and all rights it

might ever have had to object to the use by plaintiffs of the "Muse" style fit designation.

53.  Plaintiffs request a declaration from this Court that defendant is barred by the

equitable doctrines of laches, estoppel and/or acquiescence from challenging plaintiffs'

continued use of the "Muse" style fit designation.

**COUNT V**
**CANCELLATION OF U.S. REGISTRATION NO. 2,589,023 FOR THE "MUSE"**
**TRADEMARK BASED UPON DEFENDANT'S**
**COMMISSION OF FRAUD ON THE U.S. PATENT AND TRADEMARK OFFICE**
**15 U.S.C. §§ 1064 and 1119**

54.  Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through

53.

55.  15 U.S.C. § 1064 provides in pertinent part:

A petition to cancel a registration of a mark, stating the grounds relied upon, may, upon
payment of the prescribed fee, be filed as follows by any person who believes that he is
or will be damaged...At any time if the registered mark...was obtained fraudulently...

56.  15 U.S.C. § 1119 states in pertinent part:

In any action involving a registered mark the court may determine the right to
registration, order the cancelation of registrations, in whole or in part, restore canceled
registrations, and otherwise rectify the register with respect to the registrations of any
party to the action

57.  On August 12, 1999, Maggy London filed its trademark application for the "Muse"

trademark on the basis of its bona fide intent to use the trademark in commerce. The application

identified the following goods: women's wearing apparel and sportswear, namely, dresses,

blouses, pants, skirts, jackets, coats, sweaters, shirts, tops and accessories, namely, scarves,

lingeries, hosiery, shoes and hats. A copy of Maggy London's trademark application for the

"Muse" trademark is attached as Exhibit F.

58.  Following its filing of its trademark application for the "Muse" trademark with the

U.S. Patent and Trademark Office on August 12, 1999, defendant filed a "Statement of Use" for

12

its trademark on February 13, 2002 in which it alleged use of the "Muse" trademark in interstate commerce since at least as early as December 1999. The filing of the Statement of Use was a required step before the U.S. Patent and Trademark Office would issue a registration for the "Muse" trademark.

59.   In Maggy London's Statement of Use, Maggy London declared under the penalty of perjury that the "Muse' mark was being used in interstate commerce in connection with all of the goods identified in the application at that time, namely, dresses, blouses, pants, skirts, jackets, coats, sweaters, shirts, tops *and accessories, namely, scarves, lingeries, hosiery, shoes and hats.* A copy of the Statement of Use is attached as Exhibit G.

60.   The U.S. Patent and Trademark Office accepted Maggy London's Statement of Use for the "Muse" trademark on March 14, 2002 and issued a federal trademark registration for Maggy London's "Muse" trademark on July 2, 2002. The registration, Reg. No. 2,589,023, is the registration at issue in this case and is the basis for Maggy London's counterclaims against Joe's Jeans.

61.   On July 8, 2008, during the period of expedited discovery, plaintiffs took the deposition of Camille Passaro, the president of Maggy London's "Muse" division. Maggy London also identified Ms. Passaro as its designated witness under Rule 30(b)(6) of the Federal Rules of Civil Procedure.

62.   Upon questioning regarding the goods sold under the "Muse" trademark, Ms. Passaro testified that Maggy London's Muse division had *never* sold any lingerie, hosiery, shoes or hats under the "Muse" trademark. A printout of the relevant pages from the transcript of Ms. Passaro's deposition that contain this testimony are attached as Exhibit H.

63.   Ms. Passaro's admission in her deposition that Maggy London's Muse division has never sold any lingerie, hosiery, shoes or hats under the "Muse" trademark contradicts Maggy

13

London's sworn statements made in the Statement of Use filed with the U.S. Patent and
Trademark Office on February 13, 2002.

64.   Maggy London knew or should have known that the allegation of use with respect
to lingerie, hosiery, shoes or hats made in the Statement of Use filed with the U.S. Patent and
Trademark Office on February 13, 2002 was false. Through the Statement of Use filing,
therefore, Maggy London committed fraud on the U.S. Patent and Trademark Office.

65.   Maggy London's Registration No. 2,589,023 is invalid because of defendant's false
statements made in the procurement of its registration for the mark.

66.   Maggy London is not entitled to maintain Registration No. 2,589,023 because the
U.S. Patent and Trademark Office's issuance of the registration was predicated upon the Maggy
London's false claim of use of the mark in interstate commerce in connection with several of the
goods identified in the application and for which the registration later issued.

67.   The sworn statements made in Maggy London's Statement of Use regarding its
alleged use of the "Muse" mark in interstate commerce were false on their face, were known to
be false, and were made to secure the registration from the Trademark Office for goods beyond
those with which the "Muse" mark had been used.

68.   The false statements made in the Maggy London's Statement of Use were material
to securing the registration for the "Muse" trademark.

69.   Joe's Jeans has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs Joe's Jeans Subsidiary, Inc. and Joe's Jeans, Inc. respectfully
request that the Court enter judgment on each count of this amended complaint as follows:

A.   Declaring that plaintiffs' continued use of the "Muse" style fit designation does not:

(1)   Constitute trademark infringement under 15 U.S.C. § 1114(1)(a);

14

      (2)     Constitute false designation of origin under 15 U.S.C. § 1125(a); or

      (3)     Constitute unfair competition under state common law;

    B.     Declaring that defendant is barred by the equitable doctrines of laches, estoppel and/or acquiescence from challenging plaintiffs' continued use of the "Muse" designation as the name of a fit for its "Joe's" brand of premium denim jeans.

    C.     Permanently enjoining defendant and its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them in challenging plaintiffs' use of the "Muse" style fit designation.

    D.     Declaring that defendant procured its registration for the alleged "Muse" trademark through the commission of fraud on the U.S. Patent and Trademark Office and ordering the Commissioner of Patents and Trademarks, pursuant to 15 U.S.C. § 1119, to cancel Registration No. 2,589,023 on the ground of invalidity resulting from defendant's knowingly false allegation of interstate use made in its Statement of Use filed on February 12, 2002.

    E.     Finding this case to be exceptional pursuant to 15 U.S.C. § 1117(a);

    F.     Awarding plaintiffs their attorneys' fees, expenses and costs incurred in this action pursuant to 15 U.S.C. § 1117(a) and 28 U.S.C. §1920.

    G.     Awarding to plaintiffs such further relief as this Court deems just and proper.

Dated: New York, New York
      July 17, 2008

                    Respectfully submitted,

                    ARONAUER, RE & YUDELL, LLP

                    By:
                        John B. Re (JR-7239)
                    ARONAUER, RE & YUDELL, LLP
                    444 Madison Avenue, 17th Floor
                    New York, NY 10022

                    and

FLASTER/GREENBERG P.C.
Abbe F. Fletman
Jordan A. LaVine
1628 John F. Kennedy Boulevard
Suite 1500
Philadelphia, PA 19103
Tel 215.279.9389
Fax 215.279.9394

*ATTORNEYS FOR PLAINTIFFS, JOE'S JEANS*
*SUBSIDIARY, INC. and JOE'S JEANS, INC.*

16