John C. Re
ARONAUER, RE & YUDELL, LLP
444 Madison Avenue, 17th floor
New York, NY 10022

Abbe F. Fletman
Jordan A. LaVine
FLASTER GREENBERG PC
1628 JFK Blvd., 15th floor
Philadelphia, PA 19103

Attorneys for plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOE'S JEANS SUBSIDIARY, INC., and JOE'S JEANS, INC., | : : : | |
| Plaintiffs and Counterclaim Defendants, | : : | No. 08-cv-03248 |
| -against- | : : : | |
| MAGGY LONDON INTERNATIONAL, LTD. | : : : | |
| Defendant and Counterclaim Plaintiff. | : : : | |

### FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs, Joe' Jeans Subsidiary, Inc. and Joe's Jeans, Inc. (collectively "Joe's Jeans"),

bring this First Amended Complaint against Maggy London International, Ltd. ("Maggy

London") for a declaratory judgment that plaintiffs' continued use of the designation "Muse" as

the name of a particular fit of plaintiffs' "Joe's" branded premium denim jeans does not infringe

Maggy London's alleged trademark rights in the mark "Muse" for women's apparel, including

dresses, blouses, and sweaters.  In this amended complaint, Joe's Jeans further alleges that

Maggy London procured the alleged trademark registration for the "Muse" Trademark, Reg. No.

2,589,023, through the commission of fraud on the U.S. Patent and Trademark Office.  The

registration should therefore be deemed invalid and ordered canceled. In support of these claims, plaintiffs allege:

## NATURE OF THE ACTION

1.      This is an action for a declaratory judgment under 28 U.S.C. § 2201. Joe's Jeans seeks a declaration from this Court that its longstanding and continued use of the style designation "Muse" as the name of a particular fit of premium denim jeans: (1) does not infringe Maggy London's alleged trademark rights under 15 U.S.C. § 1114(1)(a); (2) does not constitute false designation of origin under 15 U.S.C. § 1125(a); and (3) does not constitute unfair competition under state law. Joe's Jeans further seeks a declaration that Maggy London achieved the registration of the "Muse" trademark with the U.S. Patent and Trademark Office through the commission of fraud and that the registration should therefore be deemed invalid and ordered canceled under 15 U.S.C. §§ 1064 and 1119.

2.      Plaintiffs also seek a declaration of equitable estoppel prohibiting the enforcement against Joe's Jeans of any alleged trademark rights Maggy London claims it has in any mark incorporating the word "Muse." Finally, Joe's Jeans seeks its attorneys' fees, expenses, and costs incurred in this action, and any other relief the Court deems just and proper.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over Joe's Jeans' federal claims pursuant to 28 U.S.C. § 1331, § 1338, and § 2201.

4.      This Court has subject matter jurisdiction over Count V of this amended complaint as it consists of a claim for cancelation of a federal trademark registration pursuant to the Lanham Act, 15 U.S.C. § 1119.

5. This Court has supplemental jurisdiction over Joe's Jeans' non-federal claims, pursuant to 28 U.S.C. § 1367, because these claims are so related to the federal claims that they form a part of the same case or controversy under Article III of the United States Constitution.

6. This Court also has original jurisdiction over this entire action, pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Maggy London because, *inter alia*, (1) Maggy London's principal place of business is located in this district, (2) defendant has transacted business within this state and district, and (3) defendant has otherwise made and established contacts with this state and district sufficient to permit the exercise of personal jurisdiction.

8. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to these claims occurred in this district and a substantial part of the property that is the subject of the action is situated in this district.

## THE PARTIES

9. Plaintiff Joe's Jeans Subsidiary, Inc. is corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5901 South Eastern Avenue, Commerce, California 90040.

10. Plaintiff Joe's Jeans, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5901 South Eastern Avenue, Commerce, California 90040.

11. On information and belief, Defendant Maggy London International, Ltd. is a New York corporation organized and existing under the laws of the State of New York with its principal place of business at 530 Seventh Avenue, New York, New York 10018.

## FACTS COMMON TO ALL COUNTS OF COMPLAINT

12.    Plaintiffs design, source and sell their "Joe's" and "Joe's Jeans" branded premium apparel products to more than 1,200 retail stores in the U.S. and abroad. With its competitive advantages and industry expertise in denim-wear and denim-related products, Joe's Jeans produces one of the most recognized and sought-after premium denim brands in the world. Joe's Jeans designs its own products and sources them to specification from suppliers primarily located in the U.S., Mexico and Morocco. Joe's Jeans' finished goods are then distributed directly to its customers from its distribution center in Los Angeles. Plaintiffs maintain third party showrooms in New York and Los Angeles to showcase their products for their customers. Plaintiffs have recently opened a branch office in Paris to distribute their products in Europe.

13.    Since at least as early as July 1996, Joe's Jeans has used the trademark "Joe's" in connection with its denim products discussed in the preceding paragraph. Plaintiffs' premium denim jeans sold under the "Joe's" brand are typically priced between $160 and $300. Plaintiffs' "Joe's" and "Joe's Jeans" brand jeans have received repeated and numerous mentions since the brand was launched and the brand is regularly featured in widely distributed and read fashion magazines such as *Cosmopolitan*, *InStyle*, *Glamour*, *Real Simple*, and *People*. Oftentimes in such magazines, plaintiffs' premium jeans are identified as being worn by well-known celebrities such as Tom Cruise, Will Smith, and Katie Holmes.

14.    Building upon the success of its "Joe's" branded jeans, plaintiffs were among the first companies in the premium jeans market to begin offering, several years ago, their jeans in several different "fits" or "styles," *i.e.*, to correspond to the different body types and fit preferences of its customers. Accordingly, Joe's Jeans adopted several named designations to correspond to its various fits, including, "Cigarette" (a straight-leg jean), "The Honey" (a curvy

4

fit jean), "Socialite" (a classic fit jean), "Rocker" (a flared bottom jean), "Twiggy" (a tall fit jean), "Provocateur" (a petite fit jean), and "Muse" (a high-waist fit jean).

15.    Plaintiffs did not adopt the fits discussed in the preceding paragraph as stand-alone brands; rather, Joe's Jeans adopted the designations as fit or style classifications falling under the already well established and recognized "Joe's" and "Joe's Jeans" brands. In fact, the fit names appear primarily only in Joe's Jeans' promotional materials for its jeans, on the "tear-away" tags that are attached to the exterior of plaintiffs' jeans, but removed after the jeans are purchased or worn, and on labels sewn inside the jeans that include the "Joe's" trademark.

16.    Purchasers of plaintiffs' premium jeans are not attracted to the fit names; rather, they are attracted to the established "Joe's" and "Joe's Jeans" brands. Purchasers of plaintiffs' jeans use the various fit names merely to identify their preferred fit or style of the jeans sold under the "Joe's" and "Joe's Jeans" brands and only become familiar with the fits names after having become familiar with plaintiffs' "Joe's" and "Joe's Jeans' brands.

17.    Plaintiffs currently offer ten fits for their "Joe's" and "Joe's Jeans" branded jeans, of which "Muse" is one. A representative example of plaintiffs' use of their fit names is shown in Exhibit A to the amended complaint.

18.    Since at least as early as November 2004, plaintiffs have used the "Muse" style fit designation, as discussed above. Plaintiffs have used the "Muse" designation continuously since that time and plaintiffs' "Muse" high-waist fit jean sold under the "Muse" designation has enjoyed substantial commercial success.

19.    Maggy London's Muse division designs women's apparel such as floral-patterned dresses, blouses, and skirts. Maggy London's apparel is sold in the dress departments of retail channels such as Nordstrom's, Macy's and similar women's clothing stores. Maggy London does not sell, nor has it since 2002 sold jeans or more than isolated denim products. Maggy

London's Muse division has not even sold any pants for at least the last five quarters. Maggy London's products sold at Nordstrom's, for example, consist only of patterned dresses.

20.    Maggy London uses its alleged trademark "Muse" in connection with women's apparel, including patterned dresses, blouses, and skirts. Maggy London is the record owner of Registration No. 2,589,023, issued July 2, 2002, for its alleged "Muse" trademark for the following goods: women's wearing apparel and sportswear, namely, dresses, blouses, pants, skirts, jackets, coats, sweaters, shirts, tops and accessories, namely scarves.

21.    At no point since Joe's Jeans adopted the "Muse" style designation and began using the designation in November 2004 has Joe's Jeans or anyone affiliated with plaintiffs encountered Maggy London or its alleged "Muse" trademark in the marketplace of premium denim jeans. Likewise, Joe's Jeans is wholly unaware of any instances of consumer confusion arising as a result of Maggy London's use of the "Muse" style fit designation with its particular high-waist fit of its "Joe's" branded denim jeans and Maggy London's use of its alleged "Muse" trademark in connection with its women's dresses and blouses.

22.    Between Joe's Jeans' commencement of its use of the "Muse" style fit designation in November 2004 and December 2007, neither Maggy London nor any other entity objected to Joe's Jeans' use of the "Muse" style fit designation.

23.    On December 19, 2007, Maggy London's counsel sent a letter to Joe's Jeans alleging that its use of the "Muse" style fit designation constituted infringement of Maggy London's alleged "Muse" trademark and was "likely to cause confusion in the marketplace concerning the source or sponsorship" of Joe's Jeans' premium denim jeans. In the letter, Maggy London's counsel demanded that Joe's Jeans "terminate all use of the mark 'Muse' or any variation thereof" and to "confirm such termination of use . . . immediately in writing." Counsel for Maggy London additionally demanded that Joe's Jeans provide it with information

on the number of units sold and revenue generated by products sold under the "Muse"

designation.  A copy of the December 19, 2007 letter is attached as Exhibit B.

     24.    Following their receipt of the December 19, 2007 letter, plaintiffs forwarded the

letter to their outside counsel to contact counsel for Defendant.  Joe's Jeans' outside counsel

subsequently wrote a letter dated December 26, 2007 to counsel for Maggy London indicating

that Joe's Jeans would respond after January 1, 2008 and asking, in the meantime, for Maggy

London to provide more information on the specific types of clothing Maggy London sold under

its alleged "Muse" trademark.  A copy of the December 26, 2007 letter is attached as Exhibit C.

     25.    On January 3, 2008, counsel to Joe's Jeans sent Maggy London's counsel a

substantive written response to Maggy London's December 19, 2007 letter wherein counsel for

Joe's Jeans highlighted the differences between the nature of Joe's Jeans' use of its "Muse" style

fit designation and its premium denim jeans sold under the "Muse" designation and the nature of

Maggy London's use of the alleged "Muse" trademark and Maggy London's products sold under

the alleged "Muse" mark.  In particular, plaintiffs' counsel stressed that Joe's Jeans' "Muse"

designation is never used as a stand-alone trademark or with products other than plaintiffs'

"Joe's" brand premium jeans.  Plaintiffs' counsel also informed Maggy London's counsel that

Joe's Jeans had used the "Muse" style designation since at least as early as November 2004 and

that no instances of actual confusion had come to Joe's Jeans attention in the more than three

years of plaintiffs' use of the style fit designation.  Joe's Jeans' counsel concluded in the letter,

therefore, that plaintiffs did not agree with Maggy London that there was a likelihood of

confusion between the marks.  A copy of the January 3, 2008 letter is attached as Exhibit D.

     26.    On January 29, 2008, nearly a month after receiving plaintiffs' counsel's January

3, 2008 letter, Maggy London's counsel responded to plaintiffs' counsel's January 3 letter.  In its

January 29 letter, Maggy London's counsel reiterated Maggy London's belief that there is a

likelihood of confusion between the marks and dismissed the fact that there had been no known instances of actual confusion in the more than three years that the marks had coexisted. A copy of the January 29, 2008 letter is attached as Exhibit E.

27.    Between January 29, 2008 and the initiation of the lawsuit, counsel for Joe's Jeans and Maggy London had several telephone conversations during which they discussed the possible resolution of the dispute, including how the parties might continue to be able to use their respective marks, as they have for more than three years, but Maggy London, through its counsel, rejected plaintiffs' proposals and indicated that a lawsuit would be initiated if Joe's Jeans did not immediately cease its use of the "Muse" style designation with premium denim jeans.

28.    Defendant's threatened litigation interfered with plaintiffs' ability to continue its use of its "Muse" style fit designation and its legitimate business operations and so plaintiff Joe's Jeans Subsidiary, Inc. filed its complaint for declaratory relief on April 1, 2008.

29.    Defendant answered the complaint and filed its counterclaims on May 1, 2008. The parties also stipulated, on April 30, 2008, that Joe's Jeans, Inc. would be added as a plaintiff and counterclaim defendant.

30.    Maggy London filed its motion for a preliminary injunction on May 5, 2008. The parties subsequently agreed in a stipulation dated May 22, 2008 to a period of expedited discovery to be conducted in advance of plaintiffs' deadline for filing papers responsive to the motion for a preliminary injunction.

## COUNT I
## DECLARATION OF NON-INFRINGEMENT UNDER THE LANHAM ACT

31.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 30.

8

32.    A justiciable and actual controversy exists before this Court with respect to whether plaintiffs' continued use of the "Muse" style fit designation infringes any of defendant's alleged rights under the Lanham Act, 15 U.S.C. § 1051 et. seq.

33.    Plaintiffs' continued use of the style fit designation "Muse" with their premium denim jeans is not likely to cause confusion as to the source or sponsorship of plaintiffs' premium denim jeans and defendant's alleged "Muse" branded women's apparel.

34.    While each of the marks at issue consists of the term "Muse," the marks are used by plaintiffs and defendant in very different manners and the term "Muse" is not so unique or exclusively used by defendant in the apparel industry that defendant's rights in the "Muse" mark are strong enough to preclude plaintiffs' use of the "Muse" designation with products different from those sold by defendant under its alleged "Muse" mark.

35.    Defined as "the source of an artist's inspiration," *e.g.*, "Picasso was his muse," or as "one of the nine goddess daughters of Zeus and Mnemosyne," defendant's alleged "Muse" mark is, at best, a highly suggestive trademark for women's apparel products and is not entitled to a wide scope of trademark protection.

36.    Plaintiffs sell only premium denim jeans under their "Muse" style fit designation. Such goods are distinct from defendant's patterned dresses and blouses sold under defendant's alleged "Muse" trademark, thus preventing any likelihood of confusion arising among the relevant consumers for the products sold under the marks. The marketplace of premium denim jeans is additionally a distinct niche of the women's apparel market that does not overlap with the market within which defendant's products are sold.

37.    Neither plaintiffs' premium denim jeans nor defendant's dresses and blouses are inexpensive goods that would be purchased on impulse. The respective products are likely to be purchased by discerning and sophisticated purchasers of expensive women's clothing that make

their purchases carefully and only after deliberation, thus additionally eliminating the possibility of any confusion resulting from plaintiffs' continued use of its "Muse" style fit designation with premium denim jeans and defendant's use of its alleged "Muse" trademark with women's blouses and dresses.

38.    The parties' concurrent use of their marks since at least November 2004 without any known instances of actual confusion arising between the marks attests to the fact that there is no likelihood of confusion between the marks.

39.    Plaintiffs' continued use of "Muse" as the name of a particular style of denim jeans under the "Joe's" brand of premium jeans does not infringe any rights of defendant under 15 U.S.C. § 1114(1)(a).

40.    Plaintiffs request a declaration from the Court that their continued use of the "Muse" style fit designation does not infringe any of defendant's alleged rights under 15 U.S.C. § 1114(1)(a).

## COUNT II
## DECLARATION OF NO FALSE
## DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

41.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 40.

42.    A justiciable and actual controversy exists before this Court with respect to whether plaintiffs' continued use of its "Muse" style fit designation infringes any of defendant's alleged rights under 15 U.S.C. § 1125(a).

43.    Plaintiffs' continued use of their "Muse" style fit designation is not likely to cause confusion as to source of sponsorship and does not constitute a false designation of origin under 15 U.S.C. § 1125(a).

10

44.     As discussed in paragraphs 30 and 31, *supra*, defendant lacks strong enough rights in its alleged "Muse" trademark to preclude plaintiffs' use of its "Muse" style fit designation as the name of a particular fit of plaintiffs' premium denim jeans.

45.     Plaintiffs request a declaration from the Court that their continued use of the "Muse" style fit designation does not constitute unfair competition and/or a false designation of origin under 15 U.S.C. § 1125(a).

## COUNT III
## DECLARATION OF NO UNFAIR COMPETITION UNDER STATE COMMON LAW

46.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 45.

47.     A justiciable and actual controversy exists before this Court with respect to whether plaintiffs' continued use of their "Muse" style fit designation for premium denim jeans constitutes unfair competition under state common law.

48.     Plaintiffs' continued use of the "Muse" style fit designation is not likely to cause confusion as to the source or sponsorship of defendant's "Muse" products.

49.     Plaintiffs request a declaration from the Court that their continued use of the "Muse" style fit designation does not violate New York state common law.

## COUNT IV
## DECLARATION OF EQUITABLE ESTOPPEL PROHIBITING ENFORCEMENT

50.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 49.

51.     Plaintiffs relied to their detriment on defendant's unreasonable delay in asserting its claims against plaintiffs.  Defendant's delay in asserting its claims for more than three years after plaintiffs began using their "Muse" style fit designation, which use was open an notorious and was known or should have been known by defendant, is not justified or excused in law or in equity.

52.    By its conduct complained of herein, defendant has relinquished any and all rights it might ever have had to object to the use by plaintiffs of the "Muse" style fit designation.

53.    Plaintiffs request a declaration from this Court that defendant is barred by the equitable doctrines of laches, estoppel and/or acquiescence from challenging plaintiffs' continued use of the "Muse" style fit designation.

### COUNT V
### CANCELLATION OF U.S. REGISTRATION NO. 2,589,023 FOR THE "MUSE" TRADEMARK BASED UPON DEFENDANT'S COMMISSION OF FRAUD ON THE U.S. PATENT AND TRADEMARK OFFICE
### 15 U.S.C. §§ 1064 and 1119

54.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1 through 53.

55.    15 U.S.C. § 1064 provides in pertinent part:

A petition to cancel a registration of a mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed as follows by any person who believes that he is or will be damaged...At any time if the registered mark...was obtained fraudulently...

56.    15 U.S.C. § 1119 states in pertinent part:

In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action

57.    On August 12, 1999, Maggy London filed its trademark application for the "Muse" trademark on the basis of its bona fide intent to use the trademark in commerce.  The application identified the following goods:  women's wearing apparel and sportswear, namely, dresses, blouses, pants, skirts, jackets, coats, sweaters, shirts, tops and accessories, namely, scarves, lingeries, hosiery, shoes and hats.  A copy of Maggy London's trademark application for the "Muse" trademark is attached as Exhibit F.

58.    Following its filing of its trademark application for the "Muse" trademark with the U.S. Patent and Trademark Office on August 12, 1999, defendant filed a "Statement of Use" for

its trademark on February 13, 2002 in which it alleged use of the "Muse" trademark in interstate commerce since at least as early as December 1999. The filing of the Statement of Use was a required step before the U.S. Patent and Trademark Office would issue a registration for the "Muse" trademark.

59.    In Maggy London's Statement of Use, Maggy London declared under the penalty of perjury that the "Muse' mark was being used in interstate commerce in connection with all of the goods identified in the application at that time, namely, dresses, blouses, pants, skirts, jackets, coats, sweaters, shirts, tops *and accessories, namely, scarves, lingeries, hosiery, shoes and hats.* A copy of the Statement of Use is attached as Exhibit G.

60.    The U.S. Patent and Trademark Office accepted Maggy London's Statement of Use for the "Muse" trademark on March 14, 2002 and issued a federal trademark registration for Maggy London's "Muse" trademark on July 2, 2002. The registration, Reg. No. 2,589,023, is the registration at issue in this case and is the basis for Maggy London's counterclaims against Joe's Jeans.

61.    On July 8, 2008, during the period of expedited discovery, plaintiffs took the deposition of Camille Passaro, the president of Maggy London's "Muse" division. Maggy London also identified Ms. Passaro as its designated witness under Rule 30(b)(6) of the Federal Rules of Civil Procedure.

62.    Upon questioning regarding the goods sold under the "Muse" trademark, Ms. Passaro testified that Maggy London's Muse division had *never* sold any lingerie, hosiery, shoes or hats under the "Muse" trademark. A printout of the relevant pages from the transcript of Ms. Passaro's deposition that contain this testimony are attached as Exhibit H.

63.    Ms. Passaro's admission in her deposition that Maggy London's Muse division has never sold any lingerie, hosiery, shoes or hats under the "Muse" trademark contradicts Maggy

London's sworn statements made in the Statement of Use filed with the U.S. Patent and Trademark Office on February 13, 2002.

64.    Maggy London knew or should have known that the allegation of use with respect to lingerie, hosiery, shoes or hats made in the Statement of Use filed with the U.S. Patent and Trademark Office on February 13, 2002 was false.  Through the Statement of Use filing, therefore, Maggy London committed fraud on the U.S. Patent and Trademark Office.

65.    Maggy London's Registration No. 2,589,023 is invalid because of defendant's false statements made in the procurement of its registration for the mark.

66.    Maggy London is not entitled to maintain Registration No. 2,589,023 because the U.S. Patent and Trademark Office's issuance of the registration was predicated upon the Maggy London's false claim of use of the mark in interstate commerce in connection with several of the goods identified in the application and for which the registration later issued.

67.    The sworn statements made in Maggy London's Statement of Use regarding its alleged use of the "Muse" mark in interstate commerce were false on their face, were known to be false, and were made to secure the registration from the Trademark Office for goods beyond those with which the "Muse" mark had been used.

68.    The false statements made in the Maggy London's Statement of Use were material to securing the registration for the "Muse" trademark.

69.    Joe's Jeans has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs Joe's Jeans Subsidiary, Inc. and Joe's Jeans, Inc. respectfully request that the Court enter judgment on each count of this amended complaint as follows:

A.    Declaring that plaintiffs' continued use of the "Muse" style fit designation does not:

      (1)    Constitute trademark infringement under 15 U.S.C. § 1114(1)(a);

    (2)      Constitute false designation of origin under 15 U.S.C. § 1125(a); or

    (3)      Constitute unfair competition under state common law;

    B.      Declaring that defendant is barred by the equitable doctrines of laches, estoppel and/or acquiescence from challenging plaintiffs' continued use of the "Muse" designation as the name of a fit for its "Joe's" brand of premium denim jeans.

    C.      Permanently enjoining defendant and its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them in challenging plaintiffs' use of the "Muse" style fit designation.

    D.      Declaring that defendant procured its registration for the alleged "Muse" trademark through the commission of fraud on the U.S. Patent and Trademark Office and ordering the Commissioner of Patents and Trademarks, pursuant to 15 U.S.C. § 1119, to cancel Registration No. 2,589,023 on the ground of invalidity resulting from defendant's knowingly false allegation of interstate use made in its Statement of Use filed on February 12, 2002.

    E.      Finding this case to be exceptional pursuant to 15 U.S.C. § 1117(a);

    F.      Awarding plaintiffs their attorneys' fees, expenses and costs incurred in this action pursuant to 15 U.S.C. § 1117(a) and 28 U.S.C. §1920.

G.    Awarding to plaintiffs such further relief as this Court deems just and proper.

Dated: August 28, 2008                    Respectfully submitted,

                                          By: _____

                                          FLASTER/GREENBERG P.C.
                                          Abbe F. Fletman
                                          Jordan A. LaVine
                                          1628 John F. Kennedy Boulevard
                                          Suite 1500
                                          Philadelphia, PA  19103
                                          Tel 215.279.9389
                                          Fax 215.279.9394

                                          and

                                          John C. Re (JR-7239)
                                          ARONAUER, RE & YUDELL, LLP
                                          444 Madison Avenue, 17th Floor
                                          New York, NY 10022


                                          *ATTORNEYS FOR PLAINTIFFS, JOE'S JEANS
                                          SUBSIDIARY, INC. and JOE'S JEANS, INC.*

# EXHIBIT A

3/31/2008



# PENCIL LEG

CHELSEA CIGARETTE HONEY MUSE PROVOCATEUR ROCKER SOCIALITE TWIGGY
[leggings]  [straight]  [curvy]  [high-waist]  [petite]  [flare]  [classic]  [tall]

Joe's Jeans

# EXHIBIT B

# KUDMAN TRACHTEN ALOE LLP
### ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4400
NEW YORK, NY 10118
(212) 868-1010

TELECOPIER (212) 868-0013
www.kudmanlaw.com

PAUL H. ALOE†
STUART R. KUDMAN*
GARY TRACHTEN†‡

MICHELLE S. BABBITT*

THOMAS M. FURTH**

MATTHEW H. COHEN*
WILLIAM E. HAMMOND**
JOHN S. LEGO***
ALISA L. SILVERSTEIN*

*ADMITTED IN NY & NJ
**ADMITTED IN NY ONLY
***ADMITTED IN NY & CA
†ADMITTED IN NY, NJ & PA
†‡ADMITTED IN NY, NJ, CT & GA

December 19, 2007

**VIA OVERNIGHT COURIER**

Joe's Jeans, Inc.
5901 South Eastern Avenue
Commerce, CA 90040

Re:  **MUSE Trademark**
     **Maggy London International, Ltd.**
     **Our File No.: 2020.101**

Gentlemen:

This firm represents Maggy London International, Ltd. ("Maggy London"). Maggy London is the owner of valuable trademark rights in its mark MUSE. Our client has used the mark MUSE in commerce for women's clothing since at least as early as December 1999, and has built up valuable good will in its mark. Maggy London has registered its MUSE trademark and is the owner of U.S. Registration No. 2,589,023 and International Registration No. 0893819.

It has come to our attention that Joe's Jeans, Inc. is selling women's jeans under the MUSE trademark. Your use of the identical mark for women's clothing is an infringement of our client's intellectual property rights. This use by you of the infringing mark is likely to cause confusion in the marketplace concerning the source or sponsorship of your goods.

Maggy London hereby demands that you terminate all use of the mark MUSE or any variation thereof which is confusingly similar to Maggy London's MUSE trademark in connection with women's clothing. We require that you confirm such termination of use to this office immediately in writing. We also demand that you provide us with the date of first use by you of the MUSE mark, the number of units sold to date, and the dollar amount of sales of MUSE products.

KUDMAN TRACHTEN ALOE LLP

Joe's Jeans, Inc.
December 19, 2007
Page 2

Please give this matter your immediate attention. Maggy London vigorously protects its intellectual property rights and it reserves its rights to seek any and all remedies available to it under applicable law. Such remedies may include, without limitation, an award of damages, injunctive relief and attorney's fees. With your prompt and complete cooperation, however, this matter may be susceptible to resolution. Please respond within 10 days of receipt hereof.

Yours truly,

Thomas M. Furth

# EXHIBIT C



**FLASTER GREENBERG**
ATTORNEYS AT LAW • A PROFESSIONAL CORPORATION

Eight Penn Center
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103
215-279-9393
Fax: 215-279-9394
www.flastergreenberg.com

**JORDAN A. LaVINE**
Direct Dial: (215) 279-9389
E-Mail: jordan.lavine@flastergreenberg.com

December 26, 2007

Via Facsimile (212-868-1010) and First Class Mail

Thomas M. Furth
Kudman Trachten Aloe LLP
The Empire State Building
350 Fifth Avenue, Suite 4400
New York, NY 10118

Re: Maggy London International, Ltd./Joe's Jeans, Inc.
Your File No. 2020.101
Our Ref. No. I0129.5003

Dear Mr. Furth:

We represent Joe's Jeans, Inc. in connection with its intellectual property matters. Your letter of December 19, 2007 has been forwarded to our office.

We are investigating the allegations contained in your letter. Because our primary contact at Joe's Jeans is out of the office until after the 1st of the year, we will be in a better position to more fully respond to your letter after the 1st. In the meantime, if you can provide us with more information on the types of clothing with which your client has used its "Muse" trademark, it would enable us to better assess your allegations.

If you would like to discuss this matter in the meantime, please contact us.

Very truly yours,

Jordan A. LaVine

Cc:     Joe's Jeans, Inc.

Cherry Hill, NJ • Egg Harbor, NJ • Morristown, NJ • Trenton, NJ • Vineland, NJ • Wilmington, DE

# EXHIBIT D



Eight Penn Center
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103
215-279-9393
Fax: 215-279-9394
www.flastergreenberg.com

**JORDAN A. LaVINE**
Direct Dial:  (215) 279-9389
E-Mail:  jordan.lavine@flastergreenberg.com

January 3, 2008

Via Facsimile (212-868-0013) and First Class Mail          Without Prejudice

Thomas M. Furth
Kudman Trachten Aloe LLP
The Empire State Building
350 Fifth Avenue, Suite 4400
New York, NY  10118

Re:  Maggy London International, Ltd./Joe's Jeans, Inc.
Your File No. 2020.101
Our Ref. No. I0129.5003

Dear Mr. Furth:

This is further to our letter of December 26, 2007.  We have now had a chance to study your allegations in more detail and discuss the matter with Joe's Jeans.

While you have not yet provided more detail concerning your client's product lines, as requested in our December 26 letter, our understanding is that your client's products sold under its alleged "Muse" trademark are limited to blouses and dresses.  Please correct our understanding if we are incorrect.

In contrast to your client's use of the alleged "Muse" trademark with dresses and blouses, Joe's Jeans has used its "Muse" trademark since at least as early as November 2004 to identify a particular "style" or "fit" of its premium jeans sold under its registered "Joe's" and "Joe's Jeans" trademarks.  Joe's Jeans' "Muse" style is one of ten such styles.  Joe's Jeans' "Muse" designation is never used as a standalone trademark or with products other than Joe's Jeans' premium jeans.

You allege in your December 19 letter that Joe's Jeans' use of the "Muse" style designation is likely to cause confusion with your client's alleged "Muse" trademark, but Joe's Jeans is unaware of any instances of actual confusion in the over three years that the marks have

Thomas M. Furth
January 3, 2008
Page 2

apparently coexisted. We believe the nature of Joe's Jeans' use of the "Muse" mark and the differences between the types of apparel sold under the marks are the reasons that no instances of confusion have arisen. For these same reasons, we do not believe any confusion is likely to occur in the future.

We additionally note that your client's rights in its alleged "Muse" mark are not as broad as alleged in your letter. While your client's registration identifies items such as pants, jackets, shoes and hats, it does not appear that your client has ever actually used in commerce the alleged "Muse" mark with such products.

In sum, for all of the foregoing reasons, Joe's Jeans does not believe there is any likelihood of confusion between the respective "Muse" trademarks. Nonetheless, Joe's Jeans is willing to consider entering into an agreement with your client that would perhaps provide some limitations on how the parties use their respective marks and hopefully address any concerns of your client. Such an arrangement appears to make sense in this situation, as opposed to the parties spending time and money on litigation, the results of which would be unpredictable.

Please contact us at your convenience so that we can further discuss this matter.

Very truly yours,

Jordan A. LaVine

Cc:     Joe's Jeans, Inc.

# EXHIBIT E

# KUDMAN TRACHTEN ALOE LLP
## ATTORNEYS AT LAW

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4400
NEW YORK, NY 10118
(212) 868-1010

TELECOPIER (212) 868-0013
www.kudmanlaw.com

PAUL H. ALOE†
STUART R. KUDMAN*
GARY TRACHTEN††

MICHELLE S. BABBITT*

THOMAS M. FURTH**

MATTHEW H. COHEN*
WILLIAM E. HAMMOND**
JOHN S. LEGO***
ALISA L. SILVERSTEIN*

*ADMITTED IN NY & NJ
**ADMITTED IN NY ONLY
***ADMITTED IN NY & CA
†ADMITTED IN NY, NJ & PA
††ADMITTED IN NY, NJ, CT & GA

January 29, 2008

**VIA E-Mail and FIRST CLASS MAIL**

Jordan A. LaVine, Esq.
Flaster Greenberg
Eight Penn Center
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103

Re:    **Maggy London International, Inc./Joe's Jeans, Inc.**
        **MUSE Trademark Infringement**
        **Our File:  2020.101**

Dear Mr. LaVine:

This is in response to your letter of January 3, 2008.  There are several factual errors in your letter that may have led you to misunderstand our client's position.  We also reach different legal conclusions from the ones you have articulated.

Your understanding concerning Maggy London International, Ltd.'s ("Maggy London") product line is incorrect.  Its products are not limited to blouses and dresses, but rather include pants, skirts, jackets, coats, sweaters, shirts, tops and scarves.  All of these are sold bearing Maggy London's MUSE label.

While your client may intend that its use of the MUSE trademark designate a particular "style" or "fit" of its jeans, it cannot be argued that its use of MUSE is other than as a trademark for its products, albeit for a specific style of those products.  The use of the "Joe's Jeans" and/or "Joe's" designations together with our client's MUSE trademark does not obviate the likelihood of confusion occasioned by your client's use of the identical mark on women's clothing.

## KUDMAN TRACHTEN ALOE LLP

Jordan A LaVine, Esq
January 29, 2008
Page 2

As we are sure you are well aware, documented instances of actual confusion have never been held necessary to a finding of likelihood of confusion. It would remain to be seen whether actual confusion can be documented. In any event, we take issue with your conclusion that no confusion has occurred or is likely to occur in the future.

If your client were to continue using the MUSE trademark on women's jeans, it would effectively co-opt Maggy London's clear right to expand its existing line of MUSE apparel products, which does include pants. As you must understand, this prospect is unacceptable to Maggy London.

Your letter concluded by expressing the hope that an amicable resolution might be possible. If your client has a proposal that it believes would be useful, Maggy London will consider it. However, our client's patience is not limitless.

I look forward to hearing from you shortly.

Yours truly,

Thomas M. Furth

**EXHIBIT F**

08-12-1999

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #11

DRAWING

| | |
|---|---|
| **APPLICANT** | Maggy London International, Ltd. |
| **ADDRESS** | 530 Seventh Avenue<br>New York, New York 10018 |
| **DATE OF FIRST USE** | Applicant has a bona fide intent<br>to use the mark |
| **GOODS** | Class 25:  Women's wearing apparel and<br>sportswear, namely: dresses,<br>blouses, pants, skirts,<br>jackets, coats, sweaters,<br>shirts, tops and accessories,<br>namely: scarves, lingeries,<br>hosiery, shoes and hats |

MUSE

**TRADEMARK**

75773735

# 75773735

TRADEMARK APPLICATION SERIAL NO.

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

08/18/1999 JHARLEY  00000373 75773735
01 FC:361                    245.00 OP

PTO-1555
   (5/87)

**MAGGY LONDON**
530 SEVENTH AVENUE, NEW YORK, N.Y. 10018

NO. 14615

50-943/213

CHEMICAL BANK
500 PLUM STREET
SYRACUSE, N.Y. 13204

| DATE | AMOUNT |
|------|--------|
| 8-10-99 | 980.00 |

PAY THIS AMOUNT          *$980.00*

TO THE
ORDER OF: The Assistant Commissioner
for Trademarks

MAGGY LONDON INTERNATIONAL LTD

⑈014615⑈ ⑆0213094134⑆ 755⑈773713⑈

# SILVERBERG STONEHILL & GOLDSMITH, P.C.

### ATTORNEYS AT LAW
### 111 WEST 40TH STREET
### NEW YORK, NEW YORK 10018

(212) 730-1900

FACSIMILE
(212) 391-4556

August 10, 1999

**VIA FEDERAL EXPRESS**

Assistant Commissioner for Trademarks
Box New App/Fee
2900 Crystal Drive
Arlington, VA  22202-3513

### RE: Trademark - MUSE

Gentlemen and Ladies:

Enclosed please find the following original documents in connection with MUSE trademark for Classes 9, 18, 24 and 25 executed by the applicant, Maggy London International, Ltd.:

1.    An Intent To Use Trademark Application, a Drawing Page and a Letter of Representation with respect to Classes 9, 18 and 24; and

2.    An Intent to Use Trademark Application, a Drawing Page and a Letter of Representation with respect to Class 25.

In addition, enclosed please find a check in the amount of $980.00 made payable to the Assistant Commissioner for Trademarks for the application fee.

Please process the enclosed applications as quickly as possible and forward to me all future correspondence relating to this mark.

Thank you.

Very truly yours,

Donna M. Beato

Enclosures

| TRADEMARK/SERVICE MARK APPLICATION, PRINCIPAL REGISTER WITH DECLARATION | MARK (Word(s) and/or Design)<br><br>MUSE | CLASS NO. (if known)<br><br>25 |
|---|---|---|

**TO THE ASSISTANT COMMISSIONER FOR TRADEMARKS:**

**APPLICANT'S NAME:** MAGGY LONDON INTERNATIONAL, LTD.

**APPLICANT'S MAILING ADDRESS:**

MAGGY LONDON INTERNATIONAL, LTD.
530 SEVENTH AVENUE
NEW YORK, NEW YORK 10018

(Display address exactly as it should appear on registration)

**APPLICANT'S ENTITY TYPE:** (Check one and supply requested information)

| | |
|---|---|
| | Individual - Citizen of (Country): |
| | Partnership - State where organized (Country, if appropriate): _____<br>Names and Citizenship (Country) of General Partners: _____ |
| X | Corporation - State (Country, if appropriate) of Incorporation:    NEW YORK |
| | Other (Specify Nature of Entity and Domicile): |

**GOODS AND/OR SERVICES:**

Applicant requests registration of the trademark/service mark shown in the accompanying drawing in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. 1051 et. seq., as amended) for the following goods/services (SPECIFIC GOODS AND/OR SERVICES MUST BE INSERTED HERE):

Class 25:  Women's wearing apparel and sportswear, namely: dresses, blouses, pants
skirts, jackets, coats, sweaters, shirts, tops and accessories, namely:
scarves, lingeries, hosiery, shoes and hats

**BASIS FOR APPLICATION:** (Check boxes which apply, but never both the first AND second boxes, and supply requested information related to each box checked.)

| | |
|---|---|
| [ ] | Applicant is using the mark in commerce on or in connection with the above identified goods/services. (15 U.S.C. 1051(a), as amended.) Three specimens showing the mark as used in commerce are submitted with the application.<br>• Date of first use of the mark in commerce which the U.S. Congress may regulate (for example, interstate or between the U.S. and a foreign country): _____<br>• Specify the type of commerce: _____ (for example, interstate or between the U.S. and a specified foreign country)<br>• Date of first use anywhere (the same as or before use in commerce date): _____<br>• Specify intended manner or mode of use of mark on or in connection with the goods/services: _____<br>(for example, trademark is applied to labels, service mark is used in advertisements) |
| [X] | Applicant has a bona fide intention to use the mark in commerce on or in connection with the above identified goods/services. (15 U.S.C. 1051(b), as amended.)  Mark will be affixed to<br>• Specify manner or mode of use of mark on or in connection with the goods/services: goods, labels, hangtags and used in advertisements<br>(for example, trademark will be applied to labels, service mark will be used in advertisements) |
| [ ] | Applicant has a bona fide intention to use the mark in commerce on or in connection with the above identified goods/services, and asserts a claim of priority based upon a foreign application in accordance with 15 U.S.C. 1126(d), as amended.<br>• Country of foreign filing: _____  • Date of foreign filing: _____ |
| [ ] | Applicant has a bona fide intention to use the mark in commerce on or in connection with the above identified goods/services and, accompanying this application, submits a certification or certified copy of a foreign registration in accordance with 15 U.S.C. 1126(e), as amended<br>• Country of registration: _____  • Registration number: _____ |

**NOTE: Declaration, on Reverse Side, MUST be Signed**

PTO Form 1478 (REV 6/94)
OMB No. 0651-0009 (Exp. 06/30/98)

U.S. DEPARTMENT OF COMMERCE/Patent and Trademark Office

## DECLARATION

The undersigned being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or if the application is being filed under 15 U.S.C. 1051(b), he/she believes the applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the above identified mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true.

August 10, 1999
DATE

(212) 944-7199
TELEPHONE NUMBER

SIGNATURE

Lawrence Lefkowitz, President
PRINT OR TYPE NAME AND POSITION

---

### INSTRUCTIONS AND INFORMATION FOR APPLICANT

**TO RECEIVE A FILING DATE, THE APPLICATION <u>MUST</u> BE COMPLETED AND SIGNED BY THE APPLICANT AND SUBMITTED ALONG WITH:**

1. The prescribed **FEE ($245.00)** for each class of goods/services listed in the application;
2. A **DRAWING PAGE** displaying the mark in conformance with 37 CFR 2.52;
3. If the application is based on use of the mark in commerce, **THREE (3) SPECIMENS** (evidence) of the mark as used in commerce for each class of goods/services listed in the application. All three specimens may be the same. Examples of good specimens include: (a) labels showing the mark which are placed on the goods; (b) photographs of the mark as it appears on the goods, (c) brochures or advertisements showing the mark as used in connection with the services.
4. An **APPLICATION WITH DECLARATION** (this form) - The application must be signed in order for the application to receive a filing date. Only the following persons may sign the declaration, depending on the applicant's legal entity: (a) the individual applicant; (b) an officer of the corporate applicant; (c) one general partner of a partnership applicant; (d) all joint applicants.

**SEND APPLICATION FORM, DRAWING PAGE, FEE, AND SPECIMENS (IF APPROPRIATE) TO:**

Assistant Commissioner for Trademarks
Box New App/Fee
2900 Crystal Drive
Arlington, VA 22202-3513

Additional information concerning the requirements for filing an application is available in a booklet entitled **Basic Facts About Registering a Trademark**, which may be obtained by writing to the above address or by calling: (703) 308-HELP.

This form is estimated to take an average of 1 hour to complete, including time required for reading and understanding instructions, gathering necessary information, recordkeeping, and actually providing the information. Any comments on this form, including the amount of time required to complete this form, should be sent to the Office of Management and Organization, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, D.C. 20231. Do NOT send completed forms to this address.

Commissioner of Patents and Trademarks
U.S. Department of Commerce
Patent and Trademark Office
Washington, D.C. 20231

     Re: Trademark - **MUSE**

Gentlemen:

    Please recognize Silverberg Stonehill & Goldsmith, P.C., a Professional Corporation with the following members: Sheldon Silverberg, Robert Stonehill, Michael B. Goldsmith, Kenneth R. Schachter, Harvey T. Haber, Marvin Epstein and Jay L. Silverberg, all admitted to the Bar of the State of New York, with offices at 111 West 40th Street, New York, New York 10018, to prosecute this application, to transact all business in connection therewith, and to receive the certificate.

                               Very truly yours,
                               Maggy London International, Ltd.

                        By: _____
                              Lawrence Lefkowitz
                              President

# EXHIBIT G

2486/2

## STATEMENT OF USE UNDER 37 CFR 2.88, WITH DECLARATION

Applicant                              :      **Maggy London International, Ltd.**

Mark                                   :      **MUSE**

Serial No.                             :      **75/773,735**

Filing Date                            :      **August 12, 1999**

Notice of Allowance Issue Date         :      **August 21, 2001**

02-13-2002

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #34

## TO THE ASSISTANT COMMISSIONER OF TRADEMARKS:

Applicant requests registration of the above-identified trademark in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. 1051 et.seq., as amended). One specimen of use showing the mark as used in commerce is submitted with this statement.

Applicant is using the mark in commerce on or in connection with all of the goods identified in the Notice of Allowance.

The trademark was first used in connection with the goods at least as early as December 1999; was first used in interstate commerce in connection with the goods at least as early as December 1999; and is now in such use in commerce.

02/14/2002 GTHOMAS2 00000125 75773735

01 FC:363                           100.00 OP

02/07/02    13:24  FAX 212 840 2483        MAGGY LONDON            912128402483        P.04
FEB 07 2002 12:20 PM FR MF    NA MARRIOTT 954 527 6705

# DECLARATION

The undersigned being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he is properly authorized to execute this Statement of Use on behalf of the Applicant; he believes Applicant to be the Owner of the mark sought to be registered, the trademark/service mark is now in use in commerce; and all statements made of her own knowledge are true and all statements made on information and belief are believed to be true.

Applicant: Maggy London International, Ltd.

By: _____
Name: Larry Lefkowitz
Title: President

Dated:    New York, New York
          February 7 , 2002

S:\susans\clients\G9Miscellaneous\Maggy London Int\MUSE SOU Cr25.wpd

# CERTIFICATE OF MAILING

I hereby certify that this correspondence is being deposited with the United States Postal Service as First Class Mail in an envelope addressed to Assistant Commissioner for Trademarks, 2900 Crystal Drive, Arlington, Virginia 22202-3513, on:

Date of Deposit February 11, 2002

Susan Santaniello
(Name of applicant, assign or Registered Representative)

*Susan Santaniello*
(Signature)

**February 11, 2002**
(Date of Signature)

8-21-01

2486/2

## STATEMENT OF USE UNDER 37 CFR 2.88, WITH DECLARATION

| | | |
|---|---|---|
| **Applicant** | : | **Maggy London International, Ltd.** |
| **Mark** | : | **MUSE** |
| **Serial No.** | : | **75/773,735** |
| **Filing Date** | : | **August 12, 1999** |
| **Notice of Allowance Issue Date** | : | **August 21, 2001** |

### TRANSMITTAL OF STATEMENT OF USE, WITH DECLARATION

BOX ITU FEES
Assistant Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3513

02-13-2002

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #34

M A D A M :

In accordance with Section 1(d)(1) of the Trademark Act, applicant submits

herewith a Statement of Use in connection with the above-identified application, together

with the required specimen of use for goods in Class 25.

Applicant also submits herewith a check in the amount of $100.00 for the

required fee. The Commissioner is authorized to charge any additional fees which may be

required, or to credit any overpayment, to our Deposit Account No. 07-1730.

Dated: New York, New York
　　　　February 11, 2001

Respectfully submitted,

GOTTLIEB, RACKMAN & REISMAN, P.C.
Attorneys for Applicant
270 Madison Avenue
New York, New York 10016
(212) 684-3900

By: _____
　　　George Gottlieb

S:\susans\clients\GGMiscellaneous\Maggy London Int'l\PTOltrMUSE25SOU.wpd

# EXHIBIT H

HIGHLY CONFIDENTIAL

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x

JOE'S JEANS SUBSIDIARY, INC., and

JOE'S JEANS, INC.,

                        Plaintiffs,

                                No. 08-cv-03248

            -against-

MAGGY LONDON INTERNATIONAL, LTD.,

                        Defendant.

-----------------------------------x

                    July 8, 2008

                    11:45 a.m.

        Deposition of CAMILLE PASSARO, taken by

Plaintiff, pursuant to notice, at the offices of

Aronauer, Re & Yudell, LLP, 444 Madison Avenue,

New York, New York, before Jack Finz, a Certified

Shorthand Reporter and Notary Public within and

for the State of New York.

44 (Pages 170 to 173)

Page 170

1    CAMILLE PASSARO - HIGHLY CONFIDENTIAL
2        MR. FURTH: I object to the form of
3    the question; no foundation. You can answer.
4        Q. The question is would that surprise
5    you.
6        A. Yes.
7        Q. Go on the website.
8        What efforts, if any, does the Muse
9    division make to investigate the use of the Muse
10   name by others?
11       A. I don't know that we do. I think
12   that when it's come across our plate and we've
13   addressed it, we have been able to. But I don't
14   know that we go out there seeking it. We are
15   really spending our time running our businesses.
16       Q. Do you have any understanding of how
17   Mr. Kudman first became aware of the Joe's Jean
18   Muse fit?
19       A. His wife was shopping and she found
20   it.
21       Q. Do you know where his wife was
22   shopping?
23       A. I'm not certain.
24       Q. Did you have an understanding?
25       A. It was a department store, and I

Page 171

1    CAMILLE PASSARO - HIGHLY CONFIDENTIAL
2    believe it might have been Bloomingdale's, but
3    I'm guessing.
4        Q. Is the Muse line in Bloomingdale's?
5        A. No, it's not.
6        Q. Do you know what Mr. Kudman's wife
7    was shopping for when she came across the Joe's
8    jeans?
9        A. No.
10       Q. So you don't know if she was shopping
11   for jeans, for example?
12       A. No, I do not.
13       Q. Does the Muse line include lingerie?
14       A. Do I manufacture lingerie?
15       Q. Yes.
16       A. No.
17       Q. Are all products sold under your Muse
18   line name manufactured by the Muse division?
19       A. I'm not understanding.
20       Q. Are you a manufacturing company, or
21   do other people manufacture goods that are sold
22   under your Muse label?
23       A. No, we are a manufacturing company.
24       Q. And so when you say you don't
25   manufacture lingerie, that also means you don't

Page 172

1    CAMILLE PASSARO - HIGHLY CONFIDENTIAL
2    sell lingerie under the Muse name?
3        A. Correct.
4        Q. Does the Muse division sell hosiery
5    under the Muse name?
6        A. No.
7        Q. Does the Muse division sell shoes
8    under the Muse name?
9        A. No.
10       Q. Does the Muse division sell hats
11   under the Muse name?
12       A. No.
13       Q. Does the Muse division sell
14   accessories under the Muse name?
15       A. No.
16       Q. Has the Muse division ever sold
17   accessories under the Muse name?
18       MR. FURTH: I am going to object to
19   the form of the question.
20       A. No.
21       Q. Has the Muse division ever sold
22   lingerie under the Muse name?
23       A. No.
24       Q. Has the Muse division ever sold
25   hosiery under the Muse name?

Page 173

1    CAMILLE PASSARO - HIGHLY CONFIDENTIAL
2        A. No.
3        Q. Has the Muse division ever sold shoes
4    under the Muse name?
5        A. No.
6        Q. Has the Muse division ever sold hats
7    under the Muse name?
8        A. No.
9        Q. What is a trunk show?
10       A. A trunk show is when a showroom --
11   somebody has a New York showroom, and they put a
12   whole bunch of garments in a trunk, and they make
13   a special trip to a show. It's usually done in
14   couture. We do it occasionally. And then you go
15   to the store, and they have a big gala, and you
16   show your products, and then they take orders,
17   you know, what you have in the trunk.
18       Q. Has the Muse division ever
19   participated in trunk shows?
20       A. Yes, we have.
21       Q. Did you in 2008?
22       A. I believe we actually just have. I
23   believe we actually just have.
24       Q. Is there any advertising or marketing
25   budget associated with a trunk show?

Page 178

CAMILLE PASSARO - HIGHLY CONFIDENTIAL
1     CAMILLE PASSARO - HIGHLY CONFIDENTIAL
2         MS. FLETMAN:  I would like to go
3     ahead and take a break so we can expeditiously
4     use our remaining time.
5             (A recess was taken.)
6         BY MS. FLETMAN:
7         Q.   Are you aware of any enforcement
8     efforts that the Muse division has taken when
9     it's felt that another entity is infringing its
10    trademark, other than with Roccawear, which we
11    are familiar with?
12        A.   No, I'm not.
13        Q.   Is that information that you would
14    likely know?  I mean, if an enforcement action
15    were taken on behalf of the Muse division, would
16    you know?
17        A.   Yes, I believe so.
18        Q.   Has the Muse name ever been used with
19    eyeglasses, for eyeglasses?
20        A.   To my knowledge, no.
21        Q.   Are there any current plans to use
22    the Muse name with eyeglasses?
23        A.   No.
24        Q.   Has the Muse name ever been used by
25    the Muse division for sunglasses?

Page 179

1     CAMILLE PASSARO - HIGHLY CONFIDENTIAL
2         A.   No.
3         Q.   Are there any plans to use the Muse
4     name with sunglasses?
5         A.   No.
6         Q.   Has the Muse name ever been used in
7     connection with leather goods?
8         A.   As part of apparel, we have done some
9     leather, in spots, leather in a skirt, or in a
10    jacket, something like that.
11        Q.   Apart from apparel, has the Muse
12    division Muse name ever been used for leather,
13    handbags, briefcase-type portfolios, attache
14    cases, purses, wallets, those sorts of things?
15        A.   No.
16        Q.   Are there any plans to expand the use
17    of the Muse name with leather goods of the type I
18    have just listed?
19        A.   Not to my knowledge.
20        Q.   And you would know because you are
21    president of the company?
22        A.   Yes.
23        Q.   Has the Muse division Muse name ever
24    been used in connection with home furnishings?
25        A.   No.

Page 180

1     CAMILLE PASSARO - HIGHLY CONFIDENTIAL
2         Q.   Is there any plan to use the Muse
3     name in connection with home furnishings?
4         A.   Not at this point.
5         Q.   Is that something that you think the
6     Muse division might get into at some point in the
7     future?
8         A.   To my knowledge, no.
9         Q.   Does the Muse division currently have
10    plans to market jeans?
11        A.   It depends on the trend.
12        Q.   What do you mean by that?
13        A.   At one point it would be
14    inconceivable that a dress department would carry
15    pants.  We spent, I don't know what year it was,
16    manufacturing all pants, all types of pants with
17    tops, in the dress department, because it allowed
18    it.  Trend changed.  Pants were no longer, you
19    know, the trend, and we spent two years later
20    filling it up with skirts.  Now we are on a dress
21    cycle.  If the dress department allowed jeans, it
22    would be conceivable that we would ship jeans, if
23    that was the trend.
24        Q.   So it is conceivable?
25        A.   It's conceivable.

Page 181

1     CAMILLE PASSARO - HIGHLY CONFIDENTIAL
2         Q.   Are you aware of any department store
3     dress department that carries jeans?
4         A.   Not to my knowledge, but it's not
5     inconceivable.
6             MS. FLETMAN:  We have no further
7     questions at this time.
8             MR. FURTH:  I have no questions for
9     the witness.
10            (Time noted:  5:30 p.m.)
11
12
13    _____
13            CAMILLE PASSARO
14
15    Subscribed and sworn to before me
16    this _____ day of _____, 2008.
17
18    _____
19
20
21
22
23
24
25